# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Misc. No. _____

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>    Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>    Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Jointly Administered) |
| STREAM TV NETWORKS, INC. and TECHNOVATIVE MEDIA, INC.,<br><br>    Plaintiffs,<br>v.<br><br>SHADRON L. STASTNEY, SLS HOLDINGS VI, LLC, HAWK INVESTMENT HOLDINGS LIMITED, ARTHUR LEONARD ROBERT "BOB" MORTON, SEECUBIC, INC., ALASTAIR CRAWFORD, KRZYSZTOF KABACINSKI, KEVIN GOLLOP, ASAF GOLA, JOHN DOE(S), JANE DOE(S), DELAWARE and OTHER LAW FIRMS representing and acting in concert with John Doe(s) and/or Jane Doe(s), INVESTMENT BANKS employed by John Doe(s) and/or Jane Doe(s), PATRIC THEUNE, and SEECUBIC B.V.,<br><br>    Defendants. | Adv. No. 23-00057 |

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (…4092) and Technovative Media, Inc. (…5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

**BRIEF IN SUPPORT OF MOTION OF
<u>DEBTORS FOR WITHDRAWAL OF REFERENCE</u>**

**<u>BACKGROUND</u>**

1. This case arises from Defendants' scheme to defraud the shareholders and creditors of Stream TV Networks, Inc. ("<u>Stream</u>" or the "<u>Company</u>"), and in so doing, plunder the Company to create a multi-million-dollar windfall for themselves (the "<u>Defendants</u>") while rendering the Company's reorganization and equitable treatment of creditors practical impossibilities. The Defendants (many of whom were board members or officers of Stream, and some who are yet to be identified) conspired to take over the assets of the Company in breach of their fiduciary, contractual, and other duties.

2. The conspiracy scheme Defendants engaged an effort to (a) sabotage Plaintiffs' exercise of certain debt-to-equity conversion rights held against Plaintiffs' secured debtholders, (b) stop and prevent Plaintiffs' recapitalization, which recapitalization would have rendered the secured position of certain Defendant debt instruments obsolete; (c) restrict and/or interfere with Plaintiffs' ability to raise funds and sell products, and (d) use their status as secured lenders to deny Stream the assets and other business resources essential to its successful reorganization. Defendants' conspiracy was designed to destroy Stream from the inside; to cause default events on certain debt instruments that the secured lender conspirators later transferred to their new entity, SeeCubic, Inc. ("<u>SCI</u>"); and to use those manufactured default events as a pretext for the co-conspirators to sign over all assets of Stream to SCI (controlled by Defendants) for zero dollars.

3. The conspirators were led by shareholders, SLS Holdings VI, LLC and Hawk Investment Holdings Limited, who held secured debt which was subject to conversion to equity upon Stream meeting certain fundraising targets. The secured debt was convertible to equity to encourage future investment. However, rather than acknowledge the convertible nature of their

debt instruments, these lenders made bad-faith allegations, abused their insider status, and engaged in "self-help" to the detriment of Stream and its business operations and opportunities. Moreover, these lenders manipulated their position and status as secured lenders to orchestrate a takeover scheme in which several allied and like-minded conspirators used their insider access (as directors and officers) and insider information to enhance their financial position to the detriment of other stakeholders. Bearing all the hallmarks of a fraudulent conveyance, their scheme virtually eliminated any recovery by unsecured creditors, as it resulted in a debtor that had been stripped of all its assets.

4. Not only did they exert control over the operations of the board, but they disrupted governance of the board, and violated the Company charter in a manner so blatantly inconsistent with longstanding basic tenets of Delaware corporate law that the Delaware Supreme Court, in a unanimous *en banc* decision, vacated the lower court decision which had sanctioned their actions. These lenders lured investment away from Stream to their new venture in violation of the employment agreement of one of Stream's officers who was leading the conspiracy. These same lenders actively contacted and utilized existing Stream employees to carry out the conspiracy. They improperly seized assets using self-help and accessed customer lists, investor lists, and even conspired with Stream's investment banker, who was under an contract with Stream, to divert fundraising to their new venture and away from Stream.

5. More than 100 investors relied upon representations made by the conspirators that they would honor their conversion agreements, and those investors subsequently contributed funds to Stream with those conversion agreements factored into their investment decisions. Over a period of several years, sufficient funds have been raised by Stream to extinguish and convert the majority of the secured loans. In bad faith, the senior secured lender improperly amended its

agreement to avoid its obligation. Both senior and junior secured lenders have actively conspired and continue to act in bad faith to prevent Stream from recovering its assets or raising funds, even after the Delaware Supreme Court *mandated the return of all assets to Stream.* The continuing disruption includes tortious interference by harassing and threatening investors, employees, customers, and lenders, violation of Stream's intellectual property rights, and infringement of Stream's existing third-party licenses.

6. Defendants' scheme continues despite these bankruptcy proceedings. Defendants have held valuable and key equipment of the Debtors hostage to prevent and thwart their ability to operate efficiently and fulfill open customer orders. Defendants continue their unauthorized use of Debtors' technology to support SCI as a competitor to Debtors in the global marketplace, damaging Stream and its creditors. Defendants have also interfered with the ownership and governance of the wholly owned subsidiaries of the Debtors. Defendants have also engaged in unabated, fraudulent communications with Debtors' potential and current customers and investors.

7. The Debtors have filed a complaint to receive legal damages to set off the Defendants' claims, recover their assets which have never been returned to them or disallow the Defendants' claims as they have converted the Debtors' assets, despite a ruling from the Delaware Supreme Court mandating the recovery of assets and despite the filing of the above captioned chapter 11 proceedings. The Debtors also have a fiduciary obligation to maximize the value of the bankruptcy estate and achieve a recovery for their unsecured creditors. The unsecured creditors are an important constituency which have been severely damaged by the actions of the Defendants. The multiple claims based in contract and tort, as well as the damages available under the Federal claims which have been asserted, must be pursued in order to maximize the recovery for the estate and all its stakeholders. The Defendants have abused their positions as insiders, misused insider

information and influence, to the detriment of the Debtors and their stakeholders, and continue to do so by refusing to return equipment, samples and demo units, and even the books and records of the Debtors. The Defendants have shown complete disregard for all forms of corporate and commercial law, but most shocking has been the complete disregard for the protection of U.S. trade secrets, manipulating foreign entities from within the United States to violate and infringe on the intellectual property of the Debtors and their licensors.

8.  Pursuant to 28 U.S.C. § 157(d), Bankruptcy Rule 5011, and Eastern District of Pennsylvania Local Bankruptcy Rule 5011-1, Debtors submit this Brief in Support of its Motion to Withdraw the Reference to the Bankruptcy Court. For all of the reasons set forth below, the reference to the Bankruptcy Court should be withdrawn in this matter, which involves various breaches of state and Federal law which are non-core and inextricably intertwined with the core bankruptcy remedies and actions that remain.

## LEGAL ARGUMENT

### I. ALL OF THE PERTINENT FACTORS OVERWHELMINGLY SUPPORT A WITHDRAWAL OF THE REFERENCE

1.  The District Court should withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), as each of the factors the District Court considers when making such a determination clearly weigh in favor of withdrawing the reference in this matter. 28 U.S.C. § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred to under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In determining whether to withdraw a reference to the Bankruptcy Court for cause, a District Court

will consider several factors. The most important factor is whether the proceeding is "non-core." *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d. Cir. 1996); *In re Pelullo*, 1997 U.S. Dist. LEXIS 12372, at *2 (E.D. Pa. August 15, 1997) (noting that "keeping [a non-core bad faith claim against an insurer] proceeding in the bankruptcy court wastes judicial resources because the district court must review the bankruptcy court's proposed findings of fact and conclusions de novo.") (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *In re Philadelphia Training Center Corp.*, 155 B.R. 109, 112 (E.D. Pa. 1993). The other factors the Court considers include: the most efficient use of judicial resources, the delay and costs to the parties, uniformity of bankruptcy administration, prevention of forum shopping, economical use of the debtor's and litigant's resources, and expediting the bankruptcy process. *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990).

2. Each of the above factors weighs in favor of withdrawal of the reference from the Bankruptcy Court in this case.

### A. The Causes of Action in the Complaint Contain Multiple Non-Core Causes of Action.

1. In determining whether the District Court should withdraw a reference for cause shown, the issue of whether the proceeding is "core" or "non-core" is the threshold, most important factor the District Court must consider. 28 U.S.C. §157(b); *In re Pelullo*, 1997 U.S. Dist. LEXIS 12372, at *6–7 (E.D. Pa. Aug. 15, 1997); *In re Burger Boys*, 94 F.3d at 762 (noting, of the several factors in determining whether to withdraw a reference to the bankruptcy court, the most important is whether the claim is "core" or "non-core").

2. A proceeding is a "core" matter under Section 157 if it invokes a substantive right provided for under the Bankruptcy Code or if it is a proceeding that could arise only in the context of a bankruptcy case. *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990); *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999); *see also In re Combustion Engineering Inc.*, 391 F.3d 190, 225

(3d Cir. 2004) (stating that "[c]ases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings").

3. In this case, the Debtors' state law breach of contract, negligence, tortious interference, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, lender liability, and state and federal trade secret claims are non-core proceedings, thereby satisfying the threshold, most important factor for withdrawal of the reference. *See In re Exide Techs*, 544 F.3d 196, 206–207 (3d. Cir. 2008) (finding that state law claims, "sounding in contract and tort[,]" are non-core proceedings); *In re Integrated Health Servs.*, 291 B.R. 615, 618 (Bankr. D. Del. 2003) (noting claims for breach of fiduciary duty "are "quintessential" non-core state law causes of action); *In re Peralta*, 2019 Bankr. LEXIS 3549, at *8 (Bankr. D.N.J. Nov. 14, 2019) ("Non-core matters generally include state law claims such as breach of contract . . . breach of fiduciary duty, or tort claims."); *400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P.* 2015 U.S. Dist. LEXIS 10154, at *4, *15 (E.D. Pa. Jan. 28, 2015) (holding, in part, non-core state law claims, including tortious interference with contractual relations, predominated the adversary proceeding); *In re Gen. Wireless Operations*, 2017 Bankr. LEXIS 4139, at *7 (Bankr. D. Del. Dec. 1, 2017) (holding that "The Committee's claims for breach of contract and its claim for misappropriation of trade secrets are non-core within the meaning of 28 U.S.C. § 157(b)"); *In re Allegheny Health, Educ. & Research Found.*, 1999 Bankr. LEXIS 1446, at *2, *18 (Bankr. E.D. Pa. Nov. 18, 1999) (discussing a non-core trade secret dispute); *In re Fortress Sys., LLC*, 2004 Bankr. LEXIS 1209, at *6 (Bankr. D. Neb. Aug. 16, 2004) (holding state trade secret case is non-core); *In re Kropp Equip.*, 2010 Bankr. LEXIS 3360, at *46 (Bankr. N.D. Ind. Sep. 30, 2010) (holding a state law-based trade secret dispute is a non-core proceeding); *In re Pa. Gear Corp.*, 2008 Bankr. LEXIS

4129, at* 20 (Bankr. E.D. Pa. April 22, 2008) (stating an unjust enrichment claim is a "clear non-core" proceeding); *In re Pelullo*, 1997 U.S. Dist. LEXIS 12372, at *9 (E.D. Pa. Aug. 15, 1997) (emphasizing that a "state law bad faith claim is not the type of action typically heard in the bankruptcy court and could require extensive discovery"); *In re Elk Petro., Inc.*, 2022 U.S. Dist. LEXIS 169430, at *4, *8 (Bankr. D. Del. Sep. 20, 2022) (recognizing a non-core aiding and abetting breach of fiduciary duty claim). Thus, Plaintiffs' complaint contains a plethora of non-core claims.

4. Along with the specific *Pruitt* factors, when determining whether to withdraw a reference, a District Court considers the right to a jury trial. *See In re Elk Petro*, 2022 U.S. Dist. LEXIS 169430, at *8. A jury trying a claim weighs in favor of withdrawal of reference. *In re Visteon Corp.*, 2011 U.S. Dist. LEXIS 49302, at *7 (D. Del. May 9, 2011). Significantly, the instant Plaintiffs have requested a jury trial. And the United States Bankruptcy Court cannot hold one. "It is abundantly clear that the Court's authority to conduct a jury trial is virtually non-existent. 28 U.S.C. § 157(e) provides that unless the District Court designates such authority to the Court (which it has not) and unless the parties — all parties — expressly consent (which they will not), the Court cannot honor the request for a jury trial." *In re Nortel Networks Inc.*, 2015 Bankr. LEXIS 1814, *14 (Bankr. D. Del. June 2, 2015).

5. Nevertheless, the Seventh Amendment to the United States Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. Amend. 7. A two-prong test governs whether the Seventh Amendment entitles a civil litigant to a jury trial. *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989). First, the district court compares the action to "18th-century actions brought in the court of England prior to the merger of the courts of law and equity." *Id.* Second, and more importantly, the district court examines the sought remedy and determines "whether it is legal or equitable in nature." *Id.* Generally, remedies seeking monetary damages are legal in nature;

claims thereof entitle the claimant to a trial by jury. *See Feltner v. Columbia Pictures Tv*, 523 U.S. 340, 352 (1998).

6. Here, focusing on the most important prong, though Plaintiffs also seek declaratory and equitable relief, a lion's share of their non-core claims revolve around and ultimately seek the recovery of monetary damages—the classical legal remedy. *See e.g., Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1245 (3d. Cir. 1994) (noting actions for money damages based on a breach of contract, or that sound in tort, are traditionally legal claims); *In re Pasquariello*, 16 F.3d 525, 529 (3d. Cir. 1994). And self-evidently, the non-core claims seeking monetary damages exceed twenty dollars in value. Thus, in this instance, the Seventh Amendment to the United States Constitution entitles Plaintiffs to a jury trial. Since the Bankruptcy Court cannot provide said jury trial, the Plaintiffs' Seventh Amendment entitlement thereto, coupled with the predominance of non-core claims, pushes the heavy scale well past equipoise in favor of the District Court's withdrawal of reference.

    **B.** **Judicial Economy Weighs in Favor of Withdrawing Reference in this Matter.**

7. As a non-core proceeding, the Bankruptcy Court may only make proposed findings of fact or law that are subject to *de novo* review by the District Court for final adjudication. *See Stern v. Marshall*, 564 U.S. 462, 475 (2011), *Wellness Int'l Network Ltd., v. Sharif*, 575 U.S. 665, 690 (2015). If state law grounded non-core claims are "inextricably intertwined" with the core claims' operative facts, then judicial economy weighs in favor of resolving all the claims together in one forum. *See In re U.S. Mortg. Corp.*, 2012 U.S. Dist. LEXIS 55191, at *7 (D.N.J. April 19, 2019) (holding, in an adversary proceeding involving both core and non-core claims, the *Pruitt* factors weighed in favor of withdrawing the reference). Resolving all claims "based on the same underlying transaction" in a single forum ensures the "uniform resolution of the issues" and

promotes "the economical use" of the courts' and the parties' resources. *In re Northwestern Corp.*, 2005 U.S. Dist. LEXIS 21664, at *5 (D. Del. Sep. 22, 2005). Avoiding duplicative proceedings weighs in favor of withdrawal of reference. *See id.*

8. Here, the operative facts underlying the core claims are inexorably bound up and intertwined with the non-core claims. Without a withdrawal of reference, the parties and the Courts will inevitably wind up duplicating or wasting precious economic and human resources. This case favors resolution in a single forum—a forum able to provide Plaintiffs with their constitutional right to a jury trial and which is empowered to hear both core and non-core matters. Smooth, uniform resolution of all the core and non-core counts together weighs in favor of a withdrawal of reference. The District Court's *de novo* review of the Bankruptcy Court's recommendations, in combination with the Bankruptcy Court's already busy docket, would further exacerbate any undue delay and expense. *See e.g.*, *In re Appleseed's Intermediate Holdings*, LLC, 2011 U.S. Dist. LEXIS 144315, at *9, *9 n.7 (D. Del. Dec. 14, 2011) (noting that "proceeding directly in District Court will preserve the parties' resources."). The *Appleseed* court specifically acknowledged the benefit of the parties' ability to avoid spending resources on proceeding with non-core claims in the Bankruptcy Court "only for the Bankruptcy Court Judge to propose findings of fact and conclusions of law to the district court subject to *de novo* review." *Id.* (internal quotations omitted). That is precisely what the parties would have to do in the present matter. Thus, judicial economy weighs in favor of a withdrawing the reference.

      C.      **The Remaining *Pruitt* Factors Also Weigh in Favor of Withdrawing the Reference.**

9. In determining whether a withdrawal of the reference is proper, courts consider the additional factors: whether withdrawal would promote the uniformity of bankruptcy

administration; whether withdrawal has been requested as a means of forum shopping; and whether the motion to withdraw has been made in a timely matter. *See, e.g.*, *In re Pruitt*, 910 F.2d. at 1168. Once again, these factors also weigh in favor of the withdrawal of the reference.

10. The factor concerning the uniformity of bankruptcy administration favors withdrawing the reference. If the claims in an adversary proceeding relate purely to bankruptcy, then the interest of uniform administration favors retention. *LTL Mgmt., LLC v. Doe*, 2022 U.S. Dist. LEXIS 11468, at *13–14 (D.N.J. Jan. 21, 2022). But if the claims require resolving issues of state law, then the uniformity factor weighs in favor of withdrawal. *See In re Visteon Corp.*, 2011 U.S. Dist. LEXIS 49302, at *11. In an adversary proceeding consisting of both core and non-core claims, the risk of different treatment of the same underlying facts presents a problem in "achieving uniformity in bankruptcy administration" and weighs in favor of withdrawing the reference. *In re U.S. Mortg. Corp.*, 2012 U.S. Dist. LEXIS 55191, at *8. Here, a predominance of the Plaintiffs' claims relates not just purely to bankruptcy, but they implicate and require resolution of non-bankruptcy related and state law issues. And this adversary proceeding consists of both core and non-core claims. Thus, retention here poses the risk of the Bankruptcy Court and the District Court treating the same underlying factual predicate differently. Consequently, withdrawing the reference furthers the interest of uniform bankruptcy administration.

11. The interest of discouraging forum shopping also weighs in favor of withdrawing the reference. "Seeking to secure a more friendly forum . . . is not a valid reason for a district court to withdraw the reference." *In re Elk Petro*, 2022 U.S. Dist. LEXIS 169430, at *13 (internal quotations omitted) (cleaned up). The Court should have no concern over improper forum shopping in this instance. Plaintiffs seek the reference withdrawal, not because they seek a more friendly forum, but because the requested jury trial—to which Plaintiffs are constitutionally entitled—can occur only in the District Court. Equally important, the non-core proceedings include a violation of the Defend Trade Secrets Act and lender liability claims Thus, Plaintiffs' motivation for seeking to withdraw the reference

lies, fundamentally, not on forum shopping, but on jurisdictional grounds. Accordingly, the interest in preventing improper forum shopping weighs in favor of withdrawing the reference.

12. Finally, the timeliness factor weighs in favor of withdrawing the reference. The Court examines timeliness "to prevent unnecessary delay and stalling tactics." *In re LTC Holdings, Inc.*, 2019 U.S. Dist. LEXIS 162662, at *23 (D. Del. Sep. 24, 2019). Here, Plaintiffs have moved to withdraw the reference in a timely fashion. They have so moved based not on an effort to stall the litigation or conjure procedural delay, but on good faith factual allegations. Thus, the timeliness *Pruitt* factor weighs in favor of withdrawing the reference.

WHEREFORE, Debtors respectfully request that this Court enter an order: (i) withdrawing the reference to the Bankruptcy Court and (ii) granting such other relief as is just and proper.

Dated: August 30, 2023               Respectfully submitted,

/s/ Rafael X. Zahralddin
Rafael X. Zahralddin-Aravena (PA Bar No. 71510)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Rafael.Zahralddin@lewisbrisbois.com


-and-

Vincent F. Alexander *pro hac vice*
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
Vincent.Alexander@lewisbrisbois.com

-and-

Bennett G. Fisher (*pro hac vice*)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
24 Greenway Plaza #1400
Houston, TX 77046
Telephone: (346) 241-4095
Facsimile: (713) 759-6830
Bennett.Fisher@lewisbrisbois.com

*Counsel to the Debtors*