# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>    Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>    Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Jointly Administered) |
| STREAM TV NETWORKS, INC. and TECHNOVATIVE MEDIA, INC.,<br><br>    Debtors,<br>v.<br><br>SHADRON L. STASTNEY, SLS HOLDINGS VI, LLC, HAWK INVESTMENT HOLDINGS LIMITED, ARTHUR LEONARD ROBERT "BOB" MORTON, SEECUBIC, INC., ALASTAIR CRAWFORD, KRZYSZTOF KABACINSKI, KEVIN GOLLOP, ASAF GOLA, JOHN DOE(S), JANE DOE(S), DELAWARE and OTHER LAW FIRMS representing and acting in concert with John Doe(s) and/or Jane Doe(s), INVESTMENT BANKS employed by John Doe(s) and/or Jane Doe(s), PATRIC THEUNE, and SEECUBIC B.V.,<br><br>    Defendants. | Adv. No. 23-00057 |

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (…4092) and Technovative Media, Inc. (…5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

1

**DEBTORS' MOTION FOR AN EXPEDITED HEARING ON DEBTORS' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PREMANENT INJUNCTION**

Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative"), the above-captioned debtors, debtors-in-possession, and Debtors (collectively, "Debtors"), pursuant to the United States Bankruptcy Court for the Eastern District of Pennsylvania Local Rules ("L.B.R.") 5070-1[2] seek expedited consideration of *Debtors' Motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction* ("TRO Motion"), and in support state:

**A.    Brief Overview of the Debtors' and their Assets**

Stream is a new media company founded in 2009 with a mission to advance the evolution of display technology from a flat 2D world to an immersive world of 3D where viewers do not need special glasses or goggles. Through its global engineering teams, Stream developed breakthrough glasses-free 3D display technology launched under the trade name Ultra-D™ ("Ultra-D"). Ultra-D is a proprietary and trade secret combination of hardware and software that creates a natural, comfortable, and immersive glasses-free 3D viewing experience.  Technovative, a wholly owned subsidiary of Stream, is a holding company that owns directly or indirectly all the remaining entities in the Stream global group, which subsidiaries own or hold rights in both proprietary and licensed technology.

Stream's Ultra-D technology was developed, in part, based on certain intellectual property including a portfolio of glasses-free 3D patents licensed from Philips pursuant to a Technology License Agreement dated December 8, 2011.[3]  The agreement expressly provides that, "[s]ubject to full and unconditional compliance by ULTRA-D and its Affiliates with its obligations under this

---

[2] Debtors so move in conjunction with Judicial Practices and Procedures of Bankruptcy Judge Magdeline D. Coleman, § Injunctions.  It provides: "1. Hearings on Motions for Temporary Restraining Orders or Preliminary Injunctions[:] [h]earings on motions for temporary restraining orders or preliminary injunctions are viewed and scheduled in the same manner as requests for expedited consideration in contested matters."
[3] Ex. A to Debtors' TRO Motion.

2

Agreement, Philips hereby grants to ULTRA-D and [its] Affiliates, a worldwide, non-exclusive, non-transferable license under the Licensed Software without the right to grant sublicenses."[4]

Other foundational IP "building blocks" were licensed from Rembrandt 3D Holdings Ltd. ("Rembrandt"). Stream has a technology license from Rembrandt which allows it to use the Rembrandt technology incorporated into Stream's Ultra-D solution.[5] A separate License Covenant executed on August 14, 2023 specifically prohibits issuing a license of any kind for Rembrandt IP to the Defendants or any associated entity.[6] Furthermore, this license cannot be issued to a current or former subsidiary of Stream.[7] The license allows Stream's subsidiaries to use Rembrandt IP for Stream-directed projects, but the license does not allow Stream's subsidiaries to use the Rembrandt IP for their own projects or for projects that benefit third parties other than Stream. Even though Stream has communicated this limitation to SCBV on multiple occasions, SCBV continues to work on non-Stream projects using the Rembrandt IP. Worse still, SCBV refuses to even identify the projects it is working on.

B.   The Defendants' Enacted a Takeover Scheme to Loot Stream's Assets

The TRO Motion itself arises from Defendants' continuing scheme to defraud Stream's shareholders and creditors, and in so doing, plunder Stream to create a multi-million-dollar windfall for themselves while rendering Stream's reorganization and equitable treatment of creditors practical impossibilities. The Defendants (many of whom were board members or officers of Stream, and some who are yet to be identified) conspired to take over Stream's assets in breach of their fiduciary, contractual, and other duties.

---

[4] Ex. A to Debtors' TRO Motion at 2.2.
[5] Ex. B to Debtors' TRO Motion.
[6] Ex. C. to Debtors' TRO Motion.
[7] Ex. C. to Debtors' TRO Motion.

C. **Stream Seeks Expedited Injunctive Relief to Prevent Imminent Irreparable Harm**

Stream has invested more than $160 million in developing its Ultra-D glasses-free 3D technology and has now secured initial purchase orders totaling $138.6 million.[8] However, SCI's unauthorized use of the Philips technology, as embedded in the Stream technology, violates the Philips license and presents a real and immediate threat of irreparable harm to Debtors should Philips decide to revoke its license.[9]

SCI is creating confusion in the marketplace by using Stream's own technology to compete with Stream.[10] Stastney openly admitted in Amsterdam Court that SCI is in direct competition with Stream, though it is using a completely different business model; Stream intends to sell components to its customers, whereas SCI intends to license the technology to its customers. SCI is damaging Stream by offering licenses to the same customer base that Stream is approaching for component sales. Approaching the same customer base with different pricing and business models is causing irreparable harm to Stream.[11]

SCI falsely has stated in a private placement memorandum ("PPM") there is no litigation pending against it or involving any of its assets or involving any of its officers or directors.[12] Having sent the PPM to Stream's own shareholders, attempting to raise money to use Stream's own technology to compete against Stream, Stastney and SCI are lying to and damaging Stream's shareholders, destroying the reputation of the Debtors' technology and ruining Debtors' reputation by associating Debtors' technology with these outlandish and clearly fraudulent claims. Such conduct must be stopped immediately before Debtors suffer irreparable harm.

---

[8] Ex. E to Debtors' TRO Motion, ¶ 12.
[9] Ex. D, ¶ 6–9; Exhibit
[10] Ex. E to Debtors' TRO Motion, ¶ 12.
[11] Ex. D to Debtors' TRO Motion, ¶¶ 6–9; Ex. E to Debtors' TRO Motion, ¶ 12.
[12] Ex. I to Debtors' TRO Motion, ¶ 7, section 5.f.

The Defendants' interference with both the Philips and the Rembrandt licenses could lead the parties to consider the purported sublicenses from SCBV to SCI as a breach of contract. In losing the benefits of the licenses to direct competitors, who are also using knowledge of the trade gleaned from working at Stream, there is a huge risk, and therefore a likelihood of imminent irreparable harm, that the business suffers financial loss and harm to its market share from what is, at its core, theft of Stream's technology. There is also the issue of Stream's reputational harm if other companies believe that they are being granted sublicenses when it is expressly forbidden by the licensors. If the technology is Stream's and another company is using it improperly or cheapening the product, that is further evidence of the need for expedited consideration of Debtors' TRO Motion.

In light of the foregoing, Streams' continued business operations, the preservation of its estate, and the overall orderly and efficient resolution of the underlying chapter 11 and instant adversary proceeding warrants nothing less than expedited consideration of Debtors' TRO Motion.

**D.    Stream Attempted to Reach an Agreed Expedited Hearing Date**

Stream fulfilled its obligation to consult with the interested parties in an attempt to agree on the appropriateness and dates of an expedited hearing on the Motion. L.B.R. 5070-1(g)(a) requires "a party who desires to obtain . . . expedited consideration, to the extent practicable . . . consult with all other interested parties to attempt to reach an agreement that an expedited hearing is appropriate and on the suggested hearing date or dates."

For purposes of the TRO Motion in this adversary proceeding, the interested parties are the Debtors, the adversary captioned Defendants, Rembrandt 3D, and the United States Trustee. In the afternoon of September 29, 2023, Stream reached out to the interested parties, including Defendants' counsel, in an effort to confer and reach an agreement on the hearing date for the TRO

Motion. Stream also notified Defendants of its intent to file the instant Motion for an Expedited Hearing on the TRO Motion and made itself available for further discussion thereon, including the possibility of resolving the issues in the TRO Motion itself. The US Trustee promptly replied and relayed its consent to the expedited consideration. Moreover, Rembrandt 3D, Stream's licensor also replied that it consented to the TRO Motion's expedited hearing. But, even after waiting all day and overnight, Stream has still yet to hear anything back from Defendants' counsel beyond a short inquiry, questioning the need for the exigency—exigency already fully detailed in the TRO Motion that Debtors filed in the District Court and have now refiled in this Court. The previously filed, now refiled, TRO Motion described, in great detail, the rationale for its exigency, and thus self-evidently demonstrates the necessity and appropriateness of expedited consideration—rationale of which Defendants are already fully aware.

E.  **Stream's Full Compliance with Local Bankruptcy Rule Requirements**

Stream has fully complied with the mandatory Local Bankruptcy Rule requirements for a motion's expedited consideration. L.B.R. 5070-1(g)(2) provides the mandatory content a motion for expedited consideration must contain:

> (2) <u>Content of Motion.</u> A motion for expedited consideration shall:
>
> (A) set forth with particularity the reasons expedited consideration is necessary and appropriate;
>
> (B) identify who the movant consulted as required by subdivision (f)(1);
>
> (C) describe the agreement, if any, that resulted from the consultation with other interested parties; and
>
> (D) identify who was provided a copy of the motion for expedited consideration or otherwise given notice of the motion prior to its filing; and state when and how the movant gave notice of the motion.

Stream has fully satisfied the aforementioned Local Bankruptcy Rule requirements for expedited consideration.

First, as discussed in detail and particularity in sections A–C, *supra*, expeditious resolution of the Debtors' TRO Motion is imperative to their continued business operations and preservation of its assets. Stream not only stands to face, but now currently faces, both ongoing and imminent irreparable harm. Moreover, Judge Marston's Chambers Rules expressly provide for automatic expedited consideration of motions for temporary restraining orders and preliminary injunctions.

Second, as discussed in section D, *supra*, Stream has reached out to both the United States Trustee and all of the opposing counsel. The United States Trustee promptly responded and relayed its consent to the TRO Motion's expedited consideration. And Rembrandt 3D, Stream's licensor, also replied that it consented to the TRO Motion's expedited treatment. Stream waited all day and overnight, but has still yet to hear anything back from Defendants' counsel beyond the inquiry discussed in section D, *supra*, questioning the need for expeditious consideration.

Third, the parties reached no agreement, despite Stream's communication to Defendants' counsel availing itself for further email and/or a discussion over the phone to agree on this matter.

Fourth, and finally, the Debtors have already previously served all the interested parties the TRO Motion when Debtors filed it in the United States District Court for the Eastern District of Pennsylvania and have thus already apprised Defendants of Debtors' intent to refile it in the Bankruptcy Court, per Judge Marston's direction.

**WHEREFORE**, Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order filed contemporaneously herewith, scheduling a hearing on Debtors' Motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction on October 2, 2023, or at such other time as the Court's calendar permits.

Dated: September 30, 2023     Respectfully submitted,

/s/ Rafael X. Zahralddin-Aravena
Rafael X. Zahralddin-Aravena (PA Bar No. 71510)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Rafael.Zahralddin@lewisbrisbois.com

-and-

Vincent F. Alexander *pro hac vice*
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
Vincent.Alexander@lewisbrisbois.com

-and-

Bennett G. Fisher (*pro hac vice*)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
24 Greenway Plaza #1400
Houston, TX 77046
Telephone: (346) 241-4095
Facsimile: (713) 759-6830
Bennett.Fisher@lewisbrisbois.com

-and-

Keith Kodosky
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
600 Peachtree Street, NE, Suite 4700
Atlanta, GA 30308
Telephone: (404) 991-2183
Facsimile: (404) 467-8845
Keith.Kodosky@lewisbrisbois.com

*(pro hac to be filed)*

*Counsel to the Debtors*