# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REMBRANDT 3D HOLDING LTD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TECHNOVATIVE MEDIA, INC, HAWK INVESTMENT HOLDINGS LTD., and SEECUBIC, INC.,<br><br>　　　　Defendants. | C.A. No. 1:23-cv-00193 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Dated: April 12, 2023

　　　　　　　　　　　　　　　　　　Andrew DeMarco
　　　　　　　　　　　　　　　　　　DEVLIN LAW FIRM LLC
　　　　　　　　　　　　　　　　　　1526 Gilpin Avenue
　　　　　　　　　　　　　　　　　　Wilmington, DE 19806
　　　　　　　　　　　　　　　　　　Telephone: (302) 449-9010
　　　　　　　　　　　　　　　　　　ademarco@devlinlawfirm.com

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　*Rembrandt 3D Holdings Ltd*

1

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

II. SUMMARY OF DEFENDANTS' THREATENED MISAPPROPRIATION ................... 3

III. ARGUMENT AND APPLICABLE LEGAL STANDARD ............................................... 5

   A. Likelihood of Success on the Merits ............................................................................ 5

   B. Likelihood of Irreparable Harm .................................................................................... 6

   C. Balance of Equities and Hardships ............................................................................... 7

   D. Public Interest ............................................................................................................... 7

IV. CONCLUSION .................................................................................................................. 8

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Andrx Pharm, Inc.*,
  452 F.3d 1331 (Fed. Cir. 2006) ............................................................................... 6

*Benisek v. Lamone*,
  138 S. Ct. 1942 (2018) ........................................................................................... 5

*City of Los Angeles v Lyons*,
  461 U.S. 95 (1983) ................................................................................................ 6

*Fres-co Sys. USA v. Hawkins*,
  690 Fed. Appx. 72 (Fed. Cir. 2017) ...................................................................... 8

*Hybritech Inc. v. Abbott Labs*,
  849 F.2d 1446 (Fed. Cir. 1988) ......................................................................... 7, 8

*i4i Ltd P'ship v Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ............................................................................... 7

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
  2011 WL 1980610 (D.Del May 20, 2011) ............................................................ 5

*Robert Bosch LLC v Pylon Mfg*,
  659 F.3d 1142 (Fed. Cir. 2011) ............................................................................. 7

*Trump v. Int'l Refugee Assistance Project*,
  137 S. Ct. 2080 (2017) ........................................................................................... 5

*University of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ............................................................................................... 5

*Varentec, Inc. v. Gridco, Inc.*,
  2016 U.S. Dist. LEXIS 137302 (D. Del. 2016) .................................................... 8

*Winter v Natural Resources Defense Council*,
  555 U.S. 7 (2008) ............................................................................................. 5, 6

## Statutes

DE Code Title 6, Subtitle II, Chapter 20 ...................................................................... 3

Fed. R. Civ. Pro 65 ........................................................................................................ 1

I.  **NATURE AND STAGE OF PROCEEDINGS**

Plaintiff has filed a lawsuit in this Court seeking a permanent injunction and now seeks a Temporary Restraining Order and Preliminary Injunction pursuant to the Federal Rule of Civil Procedure 65 preventing the defendants from selling, licensing, transferring or marketing its technology without a license until this matter is adjudicated. (Rembrandt 3D Holding Ltd v Technovative Media, Inc, et al, 1:23-cv-00193 Delaware District Court D-1). Defendants SeeCubic and Hawk have made no secret of their intent to do so once they acquire control of Technovative, which may possess Plaintiff's IP pursuant to a license granted to its parent company, Stream TV Networks. (Hawk Investment Holdings LTD v Stream TV Networks et al, C.A. No. 2022-0930 Delaware Chancery Court. See Rembrandt D-4. See also D-7, D-8, and D-27). However, Technovative cannot sell or transfer the license and can only distribute products for the benefit of Stream. (Settlement Agreement dated May 23, 2021, Rembrandt D-2, paragraph 14). Hawk and SeeCubic were likely to gain control at a hearing scheduled in Chancery Court for March 23, 2023, but that hearing was stayed when Stream TV Networks (Technovative's owner) and Technovative filed for bankruptcy protection in the Eastern District of Pennsylvania, (In re Stream TV Networks, Debtor Case No. 23 -10763 and 10764).

The bankruptcy action created an automatic stay preventing any technology transfer from Technovative to Hawk or SeeCubic. In an effort to circumvent the stay, Hawk and SeeCubic have filed an emergency lawsuit in the Netherlands seeking to take control of Stream's subsidiary companies which also possess Plaintiff's technology. Once in control, they have made clear they intend to sell Plaintiff's technology. They have asked the Dutch Court to hear their case On April 11, 2023 and render a quick decision, preferably on April 11th or April 12th. This filing has created the need for this motion as Plaintiff's technology is in imminent danger of being sold or transferred. (Exh. 1).

Plaintiff's lawsuit is quite simple. There is only one issue for this Court to determine. Does Plaintiff own the technology? If it does, it can control through licensing who has a right to possess and sell products embedded with the technology. If Plaintiff does not own it, then Plaintiff would have no right to exercise any control.

Plaintiff has submitted volumes of documentation and a declaration by the inventor proving Plaintiff's ownership. (Blumenthal Declaration (Exh. 2) and the Rembrandt Complaint). But this Court need not believe only this proof. Plaintiff's documentation includes agreements signed by Mathu Rajan, owner of Stream TV Networks (and thus Technovative) and Shadron Stastney, current CEO of SeeCubic, which provide for a license for Stream to possess and use Plaintiff's technology. In fact, the agreement negotiated by Mr. Stastney on behalf of Stream in front of Federal Magistrate Parker was to pay Plaintiff $5.8 million plus more than 3 million TVs at cost with a resale profit conservatively calculated to be more than $300 million. (See initial Settlement Agreement dated April 9, 2019 Rembrandt D-5). Thus Mr. Stastney and Mathu Rajan both agreed that a license was required and worth more than $300 million in value to the plaintiff. Mathu Rajan reaffirmed Plaintiff's rights and the need for a license in a Declaration filed in the pending bankruptcy proceeding on March 28, 2023. (In re Stream D-48, 95-103.)

Hawk and SeeCubic have been in litigation with Stream and Technovative for several years seeking control of Technovative and the IP assets and have stated in court on numerous occasions that once this occurs, they will sell and/or license the technology. Now stymied by the bankruptcy, Defendants seek to do an "end run" in the Netherlands. As stated in Plaintiff's Complaint, SeeCubic has already marketed the technology on its website and at a trade show in Belgium. (Rembrandt D-7, D-8 and D-27).

Plaintiff has no proof (yet) that SeeCubic has sold or licensed the Technology, which will be a primary focus of discovery. The Delaware Code prohibits threatened misappropriation. (DE

2

Code Title 6, Subtitle II, Chapter 20). The evidence is indisputable the SeeCubic and Hawk have threatened to do so and when they gain control of Technovative (and/or the Dutch subsidiaries), they will participate in the unlawful conduct.

With the bankruptcy blocking Technovative's ability to sell plaintiff's technology, (but not SeeCubic and Hawk), SeeCubic has now tried to circumvent the stay provisions by filing an action in the Netherlands to give them control of Stream's Dutch subsidiaries. These subsidiaries possess the technology owned by Plaintiff. If successful, SeeCubic will act as they have said they intend to act and sell plaintiff's technology.

Plaintiff seeks a temporary restraining order and preliminary injunction to preserve the status quo and prevent the defendants from selling or licensing plaintiff's trade secrets until this Court can rule on ownership. Absent a preliminary injunction, defendants could irreparably harm Plaintiff and effectively prevent the Court from fashioning an effective remedy and just relief.

Plaintiff, through its undersigned counsel, hereby certifies that pursuant to D. Del. Local Rule 7.1.1 that on March 13, 2023 counsel for Plaintiff made a reasonable effort to reach an agreement by written communication and was unable to resolve Plaintiff's concerns.

## II.     SUMMARY OF DEFENDANTS' THREATENED MISAPPROPRIATION

SeeCubic and Hawk have acted in concert in an effort to gain control of Plaintiff's technology through litigation against Stream and Technovative. This despite their knowledge that Stream and Technovative do not own the technology, but merely have a license. As previously mentioned, SeeCubic CEO Shadron Stastney negotiated the Stream license when he was on Stream's board of directors. Mr. Stastney cannot now argue he had no knowledge of Plaintiff's ownership rights. Several emails were sent to counsel for SeeCubic and Hawk as well as the receiver appointed by the court for Technovative, Ian Liston. These emails laid out the

3

proof of Plaintiff's ownership, but no one replied to Plaintiff forcing Plaintiff to file its lawsuit. (Rembrandt D-20, D-21, D-25 and D-26).

Mr. Blumenthal's Declaration comprehensively details his development of the foundation technology, his patent applications prior to any meeting with Stream and the June 9, 2010 Confidentiality Agreement with Stream whereby Stream agreed that Plaintiff was entitled to own all improvements made by Stream. In effect, Stream assigned ownership of those improvements to Plaintiff. (Rembrandt D-16):

> 2.3.2 all inventions, improvements….., technology, or products of the disclosing party directly resulting from or related to the Confidential Information…shall be the exclusive property of the Disclosing Party and the Recipient has no right or title thereto.

There is no dispute that Stream has an (as yet unpaid-for) license to possess Plaintiff's technology. Hawk and SeeCubic do not. While SeeCubic has claimed it has made improvements, it admitted they were derivative of Stream's technology—that is, Plaintiff's technology and thus owned by Plaintiff. (Rembrandt D-6 at 2-3).

The defendants threatened misappropriation is evidenced by numerous statements made by their counsel in the Chancery Court proceedings. They have made clear that once they get control, they will sell the technology.

The Settlement Agreement signed by Mathu Rajan on May 23, 2021 cites the trade secrets owned by Plaintiff that Stream has licensed. (Rembrandt D-2). This technology is embedded in the 3D no glasses screens and TVs. The statements of the defendants that they will sell the technology which necessarily includes Plaintiff's embedded technology is irrefutable proof of their threatened misappropriation.

While Plaintiff contends that all the technology is owned by the Plaintiff, there is no dispute that Plaintiff's trade secrets are owned by the Plaintiff and are essential to the

4

functionality of the 3D no glasses screens and TVs. SeeCubic and Hawk do not have a license to possess and sell or license and must be enjoined.

### III.    ARGUMENT AND APPLICABLE LEGAL STANDARD

Plaintiff seeks a temporary restraining order and preliminary injunction to prevent defendants from selling or transferring its technology prior to an adjudication of Plaintiff's rights. The purpose of a preliminary injunction is to preserve the relative positions of the parties until trial so as to preserve the court's ability to render a meaningful decision on merits. See *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (citing *University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Note also that the purpose of the preliminary injunction "is not to conclusively determine the rights of the parties . . . but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017). If the defendants were to sell or transfer Plaintiff's technology prior to a decision, it would effectively moot the court's authority to decide in the Plaintiff's favor, irrespective of plaintiff's proof of ownership.

Since a preliminary injunction can restrain a party's actions, the U.S. Supreme Court has set a high burden of proof for the plaintiff. The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 2011 WL 1980610, at #1 (D.Del May 20, 2011). The Supreme Court identified a four-part balancing test in *Winter v Natural Resources Defense Council*, 555 U.S. 7 (2008). Every factor weighs in favor of the Plaintiff.

    A.    Likelihood of Success on the Merits

A party must demonstrate that they are likely to succeed on the merits on their underlying cause of action.

5

Plaintiff has demonstrated such likelihood of success. Mr. Blumenthal's Declaration and the exhibits attached to the Complaint provide the timeline and proof of plaintiff's ownership. The license agreement signed by the CEO of Stream, which owns Technovative and Shadron Stastney, CEO of SeeCubic confirm that a license was required to possess and use Plaintiff's technology. (This was further affirmed by the Declaration of Mathu Rajan, CEO of Stream). Both are estopped from claiming Plaintiff has no ownership rights. Frankly, Plaintiff is unaware of any defense to its action and further states that in three years of litigation against Stream prior to Stream's admission it needed a license, Stream did not provide one document disproving Plaintiff's ownership. In several years of litigation in Delaware Chancery Court, neither Hawk nor SeeCubic have presented one document disputing Plaintiff's ownership rights. In fact, in several years of litigation, Neither Hawk nor SeeCubic have even mentioned Rembrandt in any submission or argument before the court. This was not an oversight. It was a deliberate effort to conceal Plaintiff's rights and preclude the court from asking Hawk and SeeCubic a very simple question—what right do you have to possess and sell Plaintiff's IP? A truthful answer would have mooted their lawsuit. Plaintiff's proof of ownership provided in the documents and sworn statement submitted show beyond any doubt it will prevail in this action.

  **B.**  Likelihood of Irreparable Harm

The Plaintiff must next establish that irreparable harm is likely if the Court does not grant the preliminary injunction. This requires evidence of "a real and immediate threat of future injury by the defendant." *City of Los Angeles v Lyons*, 461 U.S. 95, 107 (1983).

In order to establish irreparable harm, the movant must "clearly establish that monetary damages could not suffice." *Abbott Labs. v. Andrx Pharm, Inc.,* 452 F.3d 1331, 1348 (Fed. Cir. 2006). Plaintiff is not required to prove beyond any doubt it will suffer irreparable harm but only that it is likely to suffer such harm without an injunction. *Winter* at p. 22. Plaintiff has clearly

6

Case 1:23-cv-00571-GBW Document 32-2 Filed 10/02/24 Page 10 of 12 PageID #: 445
Case 1:23-cv-00571-GBW Document 22-2 Filed 12/22/23 Page 11 of 13 PageID #: 145
Exhibit B    Page 11 of 13

demonstrated this harm. If defendants were to sell or transfer Plaintiff's technology, including their trade secrets, it would destroy Plaintiff's advantage in the marketplace, moot Plaintiff's underlying cause of action and force plaintiff to compete against its own technology. Such competition is evidence of irreparable harm. See *Robert Bosch LLC v Pylon Mfg*, 659 F.3d 1142, 1152-4 (Fed. Cir. 2011).

    **C.**    Balance of Equities and Hardships

Once the Plaintiff has shown the likelihood of success and irreparable harm, it must show the balance of both equities and hardships is in their favor. Equities refers to Plaintiff's need and interest in obtaining an injunction and the burden the injunction would place on the defendants. *Hybritech Inc. v. Abbott Labs*, 849 F.2d 1446, 1457 (Fed. Cir. 1988).

"The 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd P'ship v Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010). Here, the balance of hardships tips decidedly in Plaintiff's favor. The need for Plaintiff to obtain the injunction is obvious. The sale of transfer of its technology when Plaintiff is likely to show its ownership would destroy its value to the Plaintiff and allow defendants to benefit by their unlawful misappropriation of Plaintiff's technology. That injury to Plaintiff far outweighs any harm to defendants. Further, defendants could easily avoid any harm by doing what the CEO of defendant SeeCubic previously admitted was required—buying a license from the Plaintiff. Simply put, defendants suffer no hardship by being enjoined from misappropriating Plaintiff's technology.

    **D.**    Public Interest

Finally, the Plaintiff must show the preliminary injunction is in the public interest. It is not possible to argue that protecting the trade secrets and technology of companies from misappropriation and sale or transfer to foreign companies, including Chinese companies, is not

7

Case 1:23-cv-00571-GBW Document 32-2 Filed 10/02/23 Page 10 of 12 PageID #: 446
Case 1:23-cv-00571-GBW Document 14-2 Filed 04/12/23 Page 12 of 13 PageID #: 146
Exhibit B    Page 12 of 13

in the public interest. American companies spend billions of dollars each year developing technologies and have a rightful expectation that the laws and courts will protect them in the event of an unlawful effort to steal and sell those technologies. Plaintiff spent years and substantial funds developing its 3D no glasses technology and it is in the public interest that technology be protected from unlawful misappropriation by the defendants. This Court should note that these four standards are not prerequisites but instead are balanced by the Court; if the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak. See *Varentec, Inc. v. Gridco, Inc.*, 2016 U.S. Dist. LEXIS 137302 at *9-10 (D. Del. 2016) (citing *Hybritech Inc. v. Abbot Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988)); see also *Fres-co Sys. USA v. Hawkins*, 690 Fed. Appx. 72, 75 (Fed. Cir. 2017). Plaintiff contends that all four criteria have been clearly and strongly established.

### IV.   CONCLUSION

For all the foregoing reasons, Plaintiff Rembrandt 3D Holdings Ltd respectfully requests that this Court issue an Order preventing defendants from selling, transferring, licensing, marketing or disclosing Plaintiff's technology and trade secrets pending a trial on the merits.

Dated:  April 12, 2023    /s/ Andrew DeMarco
Andrew DeMarco
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
ademarco@devlinlawfirm.com

*Attorneys for Plaintiff
Rembrandt 3D Holdings Ltd*

8

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

　　　　　　　　　　　　　　　　　　　　　　/s/ Andrew DeMarco
　　　　　　　　　　　　　　　　　　　　　　Andre DeMarco