# EXHIBIT C

# JONES DAY

CONCERTGEBOUWPLEIN 20 - 1071 LN AMSTERDAM - THE NETHERLANDS
TELEPHONE: +31 20 305 4200 – FACSIMILE: +31 20 305 4201

JASPER BERKENBOSCH
PARTNER
DIRECT: +31.20.3054207
E-MAIL: JBERKENBOSCH@JONESDAY.COM

Amsterdam Court
Mr. mr. T.H. van der Voorst Vader
Private Law Department, Interim Civil Judge P.O.
Box 48500
1080 BN Amsterdam

Sent by email: m.veraart@rechtspraak.nl

Your reference: C/13/731989 / KG ZA 23-299
Parties: Ultra-D Cooperative U.A. c.s. / Ultra-D Cooperative U.A. c.s. and Mathu

Radjan August 9, 2023

**RELATED:     URGENT     REQUEST     REMOVAL     TAKEN     INTERIM
DIRECTOR**

Honorable Sir,

I am sending you this notice to request that I be relieved from my position as interim director
appointed by Your Court to Stream TV International B.V., SeeCubic B.V. and Ultra-D
Coöperatief U.A. (the **Companies**) in the Ultra-D case with immediate effect. I request that
you expeditiously consider my request for relief.

As contained in Your Court's Order dated June 29, 2023 (the **Order**), Your Court appointed
me as interim director, except in the event that I am unable to perform that function and
subject to internal approvals from my firm (Jones Day).

Based on developments since my appointment, it has become clear to me that I had not been
able to obtain the necessary internal approval to fulfill this role. It has become clear, based on
the behavior of the parties and certain threats from third parties, that the assignment is not
what I and my office had understood it to be. These new facts are not in line with what I
sought or could obtain internal approval from my office for. It has also become clear that the
funding needed to cover my costs and those of Jones Day as my counsel is

EUI-1216462661v1

A D V OC AT E AND NO T A RI S S AND ⁄ A T T O R N E Y S AT L AW AND C I V I L - L A W N O T A R I
ES R E G I S T E R E D W I T H T H E C H A M B E R O R C O M M E RC E U N D E R N U M B E R
57062587

AMSTERDAM - ATLANTA - BEIJING - BOSTON - BRISBANE - BRUSSELS - CHICAGO - CLEVELAND - COLUMBUS - DALLAS DETROIT - DUBAI -
DÜSSELDORF - FRANKFURT - HONG KONG - HOUSTON - IRVINE - LONDON - LOS ANGELES - MADRID MELBOURNE - MEXICO CITY - MIAMI - MILAN
- MINNEAPOLIS - MUNICH - NEW YORK - PARIS - PERTH - PITTSBURGH SAN DIEGO - SAN FRANCISCO - SÃO PAULO - SHANGHAI - SILICON
VALLEY - SINGAPORE - SYDNEY - TAIPEI - TOKYO - WASHINGTON

JONES DAY

Page 2

coupled with conditions that cannot be accepted and as a result, expenses of my office have not been paid and presumably will not be paid.

**Progress on file**

1. First, as is known to Your Court, it was necessary to obtain financing for the ongoing expenses of the Companies and to cover my expenses and those of Jones Day. I facilitated that SeeCubic Incorporated/Hawk (the applicants, hereinafter **SCI**) agreed on a *promissory note* with SeeCubic B.V. whereby EUR 3.5 million in financing was committed for the ongoing costs the Companies, for the costs of myself and Jones Day. This *promissory note* is in the same form as the previously provided financing which was supported by both parties and this *promissory note was* also submitted to both parties (SCI and defendant Mathu Radjan and by extension Stream International Inc, hereinafter **Stream**) for comment. A small portion of the *promissory note* has been utilized for the most essential payments. SCI is currently refusing to make any further payments under the *promissory note*, as will be explained beginning with paragraph 5 of this application.

2. Stream said that - subject to the transfer of certain assets - it was willing to provide financing. Also, Stream made the condition that SeeCubic
B.V. immediately cease work on the ongoing projects contributed by SCI. I indicated that these conditions are not feasible, also in view of the considerations in the Order of Your Court. Stream subsequently indicated that it would first like to reach an agreement to transfer certain assets. I am unable to fulfill the role of independent director without funding and I cannot accept the terms of obtaining the funding from SCI and/or Stream.

3. To date, I have focused primarily on familiarizing myself with the case. To do this, I have gone through the documents, held discussions with *key* personnel and with the parties involved. To arrive at an *at arms length* working method, I drafted a protocol and gave both parties the opportunity to provide input on it. The final version of the protocol (the **Protocol**) was then shared with both parties. The Protocol is attached as **Attachment 1.**

4. During the course of carrying out the work, it became apparent that the assignment was not going as I had been led to believe by Stream and SCI. Both parties initially indicated that they saw the arrival of an independent director as a positive development and were happy to cooperate in the process. However, after the letter to your Court in which we indicated that we could accept the assignment, it turned out that the execution of this file would not only involve maintaining the Companies as a *going concern*, but that there were also a number of litigious aspects involved of which we were not aware that the Companies (or the independent director thereof) would be able to participate.

JONES DAY

Page 3

were or would be involved at the time I sought internal approval for my role and I notified Your Court that I had obtained it. The absence of these litigious aspects, are a prerequisite for my office to approve my role as an independent director.

5. After finalizing the Protocol, we entered into discussions with SCI on the ongoing projects. For these projects, work had begun some time ago (under the reign of the U.S. *receiver*) but no signed contractual framework (yet). The most advanced negotiations are ongoing with a Hyundai entity. SeeCubic B.V. employees have been working since December 2022 on a prototype for this Hyundai entity which is now ready in Eindhoven. This would receive a significant payment upon entering into the contract. In anticipation of the contract, the prototype has not yet been sent to the Hyundai entity. The signing of this contract was presented to SCI and Stream, but is now encountering great resistance from Stream and Rembrandt.

6. Rembrandt is a third party of whom I (and my office when I sought internal approval) was not aware that there was a dispute with it between Rembrandt and the Companies. Rembrandt now claims that the technology it developed is used in SeeCubic B.V.'s products. In 2021, Stream is said to have signed a *settlement agreement* with Rembrandt allowing Stream's group to use this technology for a fee. SeeCubic B.V. (and before signing the *settlement agreement* also Stream), on the other hand, has always disputed that it uses this technology. Complying with Rembrandt's and Stream's request not to work on SCI projects would significantly affect SeeCubic B.V.'s operational management. Indeed, SeeCubic B.V. would then not be allowed to work in any way on SCI's projects, while those are the only projects that have been worked on in the past year, and while Stream has not submitted any projects as yet.

7. SCI, in turn, has indicated that it will no longer provide financing if its projects are not worked on. As a result, no projects can be carried out, no expenses of my office have been paid so far, and we cannot meet other essential payments of the Companies in the short term. We have requested SCI several times to pay the expenses of my office and the Companies, and more specifically the requested *retainer* of EUR 100,000, but so far without success.

8. Meanwhile, this dispute has been brought to the attention of the American management of Jones Day by Rembrandt and Stream and Rembrandt has threatened to hold Jones Day liable for an amount of USD 1.2 - 1.5 billion if certain projects (which are necessary to obtain financing) are continued and threatened with actions against individual employees of SeeCubic B.V. We have attached this e- mail as **Attachment 2**.

JONES DAY

Page 4

9.  As a result, I cannot make an effective contribution to the management of SeeCubic B.V. or the other Companies at this time. Furthermore, the conditional acceptance of my position as an independent director, and the internal approval of my office, were based on a different representation of the facts. Had we had this knowledge of the facts, my office would not have granted this internal approval and I would not have accepted the assignment.

10. Based on the above, I would like to request you, pursuant to 4.11 of the Order, to remove me from my position as an independent director of the Companies and appoint another independent director.

11. Finally, I would like to emphasize that this request is difficult for me. On the contrary, I always strive to find a solution for every situation. Not once in the past 25 years have I felt compelled to return a court order.

Yours sincerely, Jasper


Berkenbosch