# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>   Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (MDC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>   Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (MDC)<br><br>(Jointly Administered) |
| STREAM TV NETWORKS, INC. and TECHNOVATIVE MEDIA, INC.,<br><br>   Debtors,<br>v.<br><br>SHADRON L. STASTNEY, SLS HOLDINGS VI, LLC, HAWK INVESTMENT HOLDINGS LIMITED, ARTHUR LEONARD ROBERT "BOB" MORTON, SEECUBIC, INC., ALASTAIR CRAWFORD, KRZYSZTOF KABACINSKI, KEVIN GOLLOP, ASAF GOLA, JOHN DOE(S), JANE DOE(S), DELAWARE and OTHER LAW FIRMS representing and acting in concert with John Doe(s) and/or Jane Doe(s), INVESTMENT BANKS employed by John Doe(s) and/or Jane Doe(s), PATRIC THEUNE, and SEECUBIC B.V.,<br><br>   Defendants. | Adv. No. 23-00057 |

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (…4092) and Technovative Media, Inc. (…5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

1

**DEBTORS' MOTION TO REDUCE THE PERIOD TO PRODUCE REQUESTED DOCUMENTS IN CONNECTION WITH DEBTORS' MOTION FOR A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND PREMANENT INJUNCTION**

Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative"), the above-captioned debtors, debtors-in-possession, and Plaintiffs (collectively, "Debtors"), pursuant to the United States Bankruptcy Court for the Eastern District of Pennsylvania Local Rules ("LBR") 9014-2(15); Federal Rules of Bankruptcy Procedure ("FRBP") 7026, 7034, and 9006(c)(1); and Federal Rules of Civil Procedure ("FRCP") 26 and 34, seek an Order from this Court reducing the period of time in which Defendants must produce the documents listed in *Debtors' Request for Production of Documents in Connection with Debtors' Motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction* ("TRO Motion"), and in support of cause shown state:

**A.      Brief Overview of the Debtors' and their Assets**

Stream is a new media company founded in 2009 with a mission to advance the evolution of display technology from a flat 2D world to an immersive world of 3D where viewers do not need special glasses or goggles. Through its global engineering teams, Stream developed breakthrough glasses-free 3D display technology launched under the trade name Ultra-D™ ("Ultra-D"). Ultra-D is a proprietary and trade secret combination of hardware and software that creates a natural, comfortable, and immersive glasses-free 3D viewing experience.  Technovative, a wholly owned subsidiary of Stream, is a holding company that owns directly or indirectly all the remaining entities in the Stream global group, which subsidiaries own or hold rights in both proprietary and licensed technology.

Stream's Ultra-D technology was developed, in part, based on certain intellectual property including a portfolio of glasses-free 3D patents licensed from Philips pursuant to a Technology License Agreement dated December 8, 2011.[2] The agreement expressly provides that, "[s]ubject to full and unconditional compliance by ULTRA-D and its Affiliates with its obligations under this Agreement, Philips hereby grants to ULTRA-D and [its] Affiliates, a worldwide, non-exclusive, non-transferable license under the Licensed Software without the right to grant sublicenses."[3]

Other foundational IP "building blocks" were licensed from Rembrandt 3D Holdings Ltd. ("Rembrandt"). Stream has a technology license from Rembrandt which allows it to use the Rembrandt technology incorporated into Stream's Ultra-D solution.[4] A separate License Covenant executed on August 14, 2023 specifically prohibits issuing a license of any kind for Rembrandt IP to the Defendants or any associated entity.[5] Furthermore, this license cannot be issued to a current or former subsidiary of Stream.[6] The license allows Stream's subsidiaries to use Rembrandt IP for Stream-directed projects, but the license does not allow Stream's subsidiaries to use the Rembrandt IP for their own projects or for projects that benefit third parties other than Stream. Even though Stream has communicated this limitation to SCBV on multiple occasions, SCBV continues to work on non-Stream projects using the Rembrandt IP. Worse still, SCBV refuses to even identify the projects it is working on.

---

[2] Ex. A to Plaintiffs' TRO.

[3] Ex. A to Plaintiffs' TRO at 2.2.

[4] Ex. B to Plaintiffs' TRO.

[5] Ex. C. to Plaintiffs' TRO.

[6] Ex. C. to Plaintiffs' TRO.

B.  **The Defendants' Enacted a Takeover Scheme to Loot Stream's Assets**

The TRO Motion itself arises from Defendants' continuing scheme to defraud the Stream's shareholders and creditors, and in so doing, plunder Stream to create a multi-million-dollar windfall for themselves while rendering Stream's reorganization and equitable treatment of creditors practical impossibilities. The Defendants (many of whom were board members or officers of Stream, and some who are yet to be identified) conspired to take over Stream's assets in breach of their fiduciary, contractual, and other duties.

C.  **The Current Adversary Proceeding and TRO Motion's Procedural Posture**

In connection with the underlying Chapter 11 proceeding, Debtors' filed the initial Adversary Complaint against the above captioned Defendants on August 12, 2023.[7] Couched within the currently pending adversary proceeding, Debtors filed the TRO Motion on September 30, 2023.[8] This Court held the hearing on Stream's TRO Motion this past Friday, October 6, 2023.[9] At the end of that October 6, 2023, hearing, the Court and the parties' counsel conferred in person and the Court continued the hearing on the TRO Motion until October 16, 2023.

D.  **The Relevant Federal and Local Rules Allow for Immediate Production of Documents**

The interconnected constellation of the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, and United States Bankruptcy Court for the Eastern District of Pennsylvania Local Rules permit this Court, for cause shown, to reduce the period of time in which Defendants must produce the requested documents. And because Debtors can and do show such cause, as discussed in section E, *infra*, Debtor's respectfully request the Court to order Defendants

---

[7] Adversary Proceeding D.I. 1.

[8] Adversary Proceeding D.I. 28; corrected filing entry D.I. 30.

[9] *See* Order Granting Debtors' Motion to Expedite TRO Motion, Adversary Proceeding D.I. 33.

to produce the requested documents in accordance with the contemporaneously filed proposed order: production of the requested documents by Thursday October 12, 2023 by 12:00pm (noon).

### 1. The Rules Generally Governing Debtors' Adversary Proceedings Also Govern the TRO Motion

As a threshold matter, FRBP 7001(7) squarely requires prayers for injunctive relief to be brought in an adversary proceeding. Stream has complied with that requirement.[10] FRBP 7007 incorporates and applies FRCP 7 to adversary proceedings. FRCP 7 allows by motion requests for court orders. Thus, adversary proceedings allow for and incorporate motions for court orders within the scope of the adversary proceeding itself. Accordingly, the rules generally governing adversary proceedings also govern any motions for court orders made within the scope of the underlying adversary proceeding. The Debtor's TRO Motion falls squarely within the scope of the underlying adversary proceeding. Thus, the rules generally governing adversary proceedings govern the Debtors' TRO Motion.

### 2. FRCP 26 and 34 Govern the Discovery of and Production of Documents in the Currently Pending TRO Motion

FRBP 7026—titled "General Provisions Governing Discovery"—incorporates and applies FRCP 26 to adversary proceedings. Moreover, FRBP 7034—"titled Production of Documents . . . for Inspection . . . "—incorporates and applies FRCP 34 to adversary proceedings. Since these FRBP provisions govern adversary proceedings generally, they therefore also govern motions made within their scope. Thus, by incorporation and application, FRCP 26 and 34 govern the currently pending TRO Motion.

---

[10] *See generally* Adversary Proceeding docket.

5

### 3. FRCP 26 Permits Early Document Requests

Although FRCP 26(d)(1) prohibits a party from seeking discovery before the parties have conferred together for the required 26(f) conference, FRCP(d)(2) expressly allows for "*Early Rule 34 Requests*."[11] "More than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered: (i) to that party by another party[.]"[12] Though the parties have not yet conferred for the required 26(f) conference, the Debtors may nevertheless serve an early Rule 34 request. Of particular note, along with ample communication between the parties regarding discovery, the Debtors were forced to file an original and renewed *Motion Requesting a Briefing Schedule and 26(f) Conference*, which still pends in this Court. Moreover, the Debtors filed and certified service of the underlying Adversary Complaint and summons on August 22, 2023—well over 21 days ago. Thus, Debtors may make early Rule 34 requests for the production of documents.

### 4. This Court May Reduce the Period to Produce Documents Without a Hearing

Normally, a party served with a request to produce documents for inspection under FRCP 34 must respond "within 30 days of being served or – if the request was delivered under Rule 26(d)(2) – within 30 days after the parties' first Rule 26(f) conference." But, critically, "a **shorter** or longer time may be . . . ordered by the court."[13]

Moreover, LBR 9014-2 allows this Court to order the reduction of the response time without a hearing. "The court may rule without a hearing on a motion under: . . . (15) FRBP

---

[11] (emphasis in original). Debtors also note that FRCP(d)(1) exempts certain proceedings from the 26(f) conference timeline prohibition. Under 26(a)(1)(B), to the extent that the TRO Motion is a "proceeding ancillary to a proceeding in another court," the Debtors may serve document requests irrespective of the 26(f) conference.

[12] FRCP(d)(2)(A)(i).

[13] (emphasis added).

9006(c)(1) for reduction of the time to act[.]"[14] FRBP 9006(c)(1) provides that "when an act is required or allowed to be done at or within a specified time by these rules . . . ***the court for cause shown may in its discretion . . . order the period reduced.***"[15] Debtors carry their burden to show cause for the following plethora of reasons.

E. **Cause Shown—Stream Needs Production of the Requested Documents in Connection with the Currently Pending TRO Motion Before the October 16, 2023, Reconvened Hearing to Avoid Deepening Irreparable Harm to the Debtors' Estate**

The cause for the Court to reduce the period in which Defendants must produce the requested documents in connection with the TRO Motion before the reconvened hearing mirror the cause for the TRO Motion itself. Without the requested documents' production before the reconvened hearing, Stream faces an inability to adequately protect its rights and the assets of the bankruptcy estate. Stream has invested more than $160 million in developing its Ultra-D glasses-free 3D technology and has now secured initial purchase orders totaling $138.6 million.[16] However, SCI's unauthorized use of the Philips technology, as embedded in the Stream technology, violates the Philips license and presents a real and immediate threat of irreparable harm to Debtors should Philips decide to revoke its license.[17] Thus, Debtors' need the requested documents to bolster and clarify their argument in support of its currently pending prayer for equitable relief.

SCI is creating confusion in the marketplace by using Stream's own technology to compete with Stream.[18] Stastney openly admitted in Amsterdam Court that SCI is in direct competition

---

[14] LBR 9014-2(a)(15).

[15] (emphasis added); *see also* FRBP 9006(a) (noting "the following rules apply in computing any time period specified in these rules, ***in the Federal Rules of Civil Procedure***, in any local rule or court order . . . ) (emphasis added).

[16] Ex. E to Plaintiffs' TRO, ¶ 12.

[17] Ex. D, ¶ 6–9; Exhibit

[18] Ex. E to Plaintiffs' TRO, ¶ 12.

with Stream, though it is using a completely different business model; Stream intends to sell components to its customers, whereas SCI intends to license the technology to its customers. SCI is damaging Stream by offering licenses to the same customer base that Stream is approaching for component sales. Approaching the same customer base with different pricing and business models is—at this very moment—causing irreparable harm to Stream.[19] But Stastney testified to the exact opposite in the October 6, 2023 TRO Motion hearing. Thus, Debtors' need the requested documents before the reconvened hearing.

SCI has falsely stated in a private placement memorandum ("PPM") there is no litigation pending against it or involving any of its assets or involving any of its officers or directors.[20] Having sent the PPM to Stream's own shareholders, and likely others, attempting to raise money to use Stream's own technology to compete against Stream, Stastney and SCI are lying to and damaging Stream's shareholders, destroying the reputation of the Debtors' technology and ruining Debtors' reputation by associating Debtors' technology with these outlandish and fraudulent claims. Such conduct must be stopped immediately before Debtors continue to suffer irreparable harm. But at the October 6, 2023 TRO Motion hearing, Stastney testified neither he nor the SeeCubic entities were engaging in any of the aforementioned conduct. Thus, Debtors need the requested documents before the reconvened hearing.

The Defendants' interference with both the Philips and the Rembrandt licenses could lead the parties to consider the purported sublicenses from SCBV to SCI as a breach of contract. In losing the benefits of the licenses to direct competitors, who are also using knowledge of the trade gleaned from working at Stream, there is a huge risk, and therefore a likelihood of imminent

---

[19] Ex. D to Plaintiffs' TRO, ¶¶ 6–9; Ex. E to Plaintiffs TRO, ¶ 12.

[20] Ex. I to Plaintiffs' TRO, ¶ 7, section 5.f.

irreparable harm, that the business suffers financial loss and harm to its market share from what is, at its core, theft of Stream's technology. There is also the issue of Stream's reputational harm if other companies believe that they are being granted sublicenses when it is expressly forbidden by the licensors. If the technology is Stream's and another company is using it improperly or cheapening the product, that is further evidence of Debtors' need for the requested documents before the reconvened TRO Motion hearing.

In light of the foregoing, and in consideration of: Streams' continued business operations; the preservation of its estate; the overall orderly and efficient resolution of the underlying chapter 11 and instant adversary proceeding; and the full and fair resolution of the TRO Motion, the Court should reduce the time period in which Defendants must produce the requested documents in connection with the TRO Motion.

F.    **Debtors' Compliance with LBR 7026-1**

To the extent LBR 7026-1(f) obligates Debtors to make and certify its reasonable efforts to resolve any discovery disputes, as mentioned in section D.3, *supra*, Debtors hereby certify such efforts. Along with ample communications with opposing counsel regarding discovery, Debtors were forced to file an original and renewed Motion Requesting a Briefing Schedule and Rule 26(f) Conference, which still currently pend before this Court.

**WHEREFORE**, Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order filed contemporaneously herewith, reducing the time period in which Defendants must produce and furnish to Debtors the documents listed in *Debtors' Request for Production of Documents in Connection with Debtors' Motion for a Temporary Restraining Order, Preliminary Injunction* by Thursday, October 12, 2023, by 12:00pm (noon).

Dated: October 9, 2023 Respectfully submitted,

/s/ Rafael X. Zahralddin-Aravena
Rafael X. Zahralddin-Aravena (PA Bar No. 71510)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Rafael.Zahralddin@lewisbrisbois.com

-and-

Vincent F. Alexander *pro hac vice*
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
Vincent.Alexander@lewisbrisbois.com

-and-

Bennett G. Fisher (*pro hac vice*)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
24 Greenway Plaza #1400
Houston, TX 77046
Telephone: (346) 241-4095
Facsimile: (713) 759-6830
Bennett.Fisher@lewisbrisbois.com

-and-

Keith Kodosky
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
600 Peachtree Street, NE, Suite 4700
Atlanta, GA 30308
Telephone: (404) 991-2183
Facsimile: (404) 467-8845
Keith.Kodosky@lewisbrisbois.com

*(pro hac to be filed)*

*Counsel to the Debtors*

11