# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>STREAM TV NETWORKS, INC., *et al.*,<br><br>Debtors.[2] | Chapter 11<br><br>Bankr. Case No. 23-10763 (MDC) |
| STREAM TV NETWORKS, INC. and TECHNOVATIVE MEDIA, INC.,<br><br>Plaintiffs,<br>v.<br><br>SHADRON L. STASTNEY, SLS HOLDINGS VI, LLC, HAWK INVESTMENT HOLDINGS LIMITED, ARTHUR LEONARD ROBERT "BOB" MORTON, SEECUBIC, INC., ALASTAIR CRAWFORD, KRZYSZTOF KABACINSKI, KEVIN GOLLOP, ASAF GOLA, JOHN DOE(S), JANE DOE(S), PATRIC THEUNE, SEECUBIC B.V.,<br><br>Defendants. | Adv. Case No. 23-00057 (MDC) |

## SHADRON STASTNEY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

Defendant Shadron Stastney ("Mr. Stastney") respectfully submits this Memorandum of Law in Support of His Motion to Dismiss the Complaint.

---

[2]  The Debtors, along with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015).  The location of the Debtors' service address is 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

## I.    INTRODUCTION[3]

For several years now, Stream and the Rajans have hawked claims of an unlawful

conspiracy amongst the Defendants to steal its assets to judges in the Delaware Chancery Court,

the United States District Court for the District of Delaware, the United States Bankruptcy Court

for the District of Delaware, the Pennsylvania Court of Common Pleas, and the United States

District Court for the Eastern District of Pennsylvania.[4]  On this, nothing more should need to be

said than what Vice Chancellor J. Travis Laster held almost exactly one year ago:

> Evidencing its wily ways with words, Stream argues that although it purportedly is
> not challenging the court's prior finding that "a default event on the Hawk notes
> occurred in early 2020," stream nevertheless remains free to litigate its contention
> that there was an "unlawful conspiracy that artificially manufactured the 2020
> default events through bribery and internal sabotage."  That is another way of
> contending that a defendant never really occurred.  If Stream wanted to advance
> that argument, it had to do so in the Omnibus Agreement Litigation.  Collateral
> estoppel bars Stream from advancing that argument now.

*Hawk Inv. Holdings, Ltd. v. Stream TV Networks, Inc.*, C.A. No. 2022-0930-JTL, 2022 Del. Ch.

LEXIS 343, at *45-46 (Del. Ch. Nov. 29, 2022).

And yet, regrettably, here we are.  For *the seventh time*,[5] Stream and the Rajans are arguing

that "Defendants" conspired "to destroy Stream from the inside; to cause default events on certain

---

[3]    Capitalized terms used but not otherwise defined in the Introduction shall have the meanings
given to them in the Memorandum of Law below.

[4]    Indeed, Stream has recently attempted to engineer a return trip for these claims to the Eastern
District of Pennsylvania when, likely fearing adverse rulings against it in this Court, it
attempted to remove this adversary proceeding to the Eastern District of Pennsylvania, this
time to the Honorable Karen Marston.

[5]    First, in the Omnibus Litigation, *In re: Stream TV Networks, Inc. Omnibus Agreement
Litigation*, 2020-0766-JTl (Del. Ch. Ct.); second, in the Rajans' Joint Eastern District of
Pennsylvania Litigation, *Rajan, et al. v. Crawford*, 2:21-cv-01456-TJS (E.D. Pa.); third, in the
Mathu Rajan Eastern District of Pennsylvania Litigation, *Mathu Rajan v. Crawford, et al.*,
2:21-cv-01456-TJS (E.D. Pa.); fourth, in the Raja Rajan Eastern District of Pennsylvania
Litigation, *Raja Rajan v. Crawford, et al.*, 2:21-cv-01150-TJS (E.D. Pa.); fifth, in the Stream
District of Delaware Action, *Stream TV. Networks, Inc. v. Stastney, et al.*, 22-cv-00851-CJB

debt instruments that the secured lender conspirators later transferred to their new entity, SeeCubic, Inc. ('SCI'); and to use those manufactured default events as a pretext for the co-conspirators to sign over all assets of Stream to SCI (controlled by Defendants) for zero dollars." Compl. ¶ 1. This is the exact same contention Vice Chancellor Laster has already held is barred by collateral estoppel, and it continues to be barred by collateral estoppel.

Undaunted, Stream takes this false and definitively precluded premise and constructs atop it a labyrinth of conspiracies and machinations it claims were executed to steal its assets but which were, in law and fact, Hawk and SeeCubic's efforts to, first, exercise its rights under the Chancery Court's initial injunction orders then, second, to exercise their rights as secured lenders. In Stream's telling, all actions taken by all Defendants with respect to Stream and its assets were unlawful because they are tainted by the initial unlawful conspiracy to engineer its defaults, giving rise to nineteen claims (but only fifteen actual causes of action). In reality, under the law, each of these claims must independently fail because each is premised on the already litigated and rejected claim of an initial unlawful conspiracy.

If the Court were to turn to the substance of Stream's claims, it will find them not only deficient, but the product of Stream's own deceptions of the Court. As to Mr. Stastney, Stream argues he violated his employment agreement and various related duties to Stream arising from his employment with it when, in the aftermath of Stream's default of notes held by SLS, it took steps to execute on its collateral. While it has litigated this case so many times, it is raising Mr. Stastney's employment agreement for the first time here. Why now? Because it is nothing more than a last-ditch effort to articulate any wrongdoing by Mr. Stastney that has not already been

---

(D. Del.); and sixth, in the Hawk 225 Action, *Hawk Investment Holdings, Ltd. v. Stream TV Networks, Inc.*, C.A. No. 2022-0930-JTL (Del. Ch. 2022).

rejected elsewhere.   Of course, these claims go nowhere because Stream blatantly withholds from the Court that it and Mr. Stastney entered into a severance agreement through which Stream agreed to waive all claims against Mr. Stastney arising from his employment with it.  Stream has waived the claims against Mr. Stastney it asserts here.

That is not all Stream withholds from the Court.  It has already asserted these same claims from these same events against these same defendants in the District of Delaware in a litigation its own counsel in that case – a creditor of Stream here – has urged that Court to remain stayed.  The first-filed rule prevents Stream from the kind of wasteful litigation tactics it is employing here. The Court should dismiss this action so the District of Delaware can get on with adjudicating Defendants' motions to dismiss there.

For the above three independent reasons, the Court need not expend the time examining the individual claims asserted here.  If it were to anyway, it will find that Stream has failed to adequately state claims for relief against Mr. Stastney under Fed. R. Civ. P. 12(b)(6).

With Judge Marston having not accepted Stream's invitation to take-over this proceeding, with the District of Delaware action stayed by the underlying bankruptcy filing, and with the Delaware Chancery Court awaiting resolution of that bankruptcy proceeding to finally conclude the pending 225 Action, Stream has nowhere to run to stave off judgment against it.  The Court should critically examine not just the claims in the Adversary Complaint – but Stream's litigation conduct and history, and the rulings against it already – and end Stream's abuse of the Court system.

## II.   FACTUAL BACKGROUND

The factual background related to this Motion is described in detail in SeeCubic, Inc.'s ("SeeCubic") Motion (hereinafter the "SeeCubic Motion") (Docket No. 90), which Mr. Stastney

hereby incorporates by reference.  However, the pertinent facts to Mr. Stastney's Motion are as follows:

Shadron Stastney is the Managing Member of SLS Holdings VI, LLC ("SLS").  Compl. ¶ 20.  He also serves as the Chairman of SeeCubic.  (*Id.*)  Previously, Mr. Stastney served on Stream's Board of Directors and as the Company's Chief Financial Officer ("CFO").  *See id.* ¶ 56. Prior to becoming CFO, Mr. Stastney and the Company entered into an Employment Agreement dated December 1, 2018 (the "Employment Agreement").  *Id.* at ¶ 62.

Through hundreds of paragraphs spread across 74 pages, the Complaint lays out a demonstrably false narrative of the events surrounding Stream's defaults under notes held by its secured lenders; the Parties' lengthy non-litigation efforts to resolve those defaults; the multiple litigations surrounding those defaults; and the Parties' ongoing efforts to conclude those litigations. A common thread throughout all of the prior (and continuing) litigations winding also through the Complaint is Stream and the Rajan's mischaracterizations of Mr. Stastney as a central figure in the (judicially-debunked) conspiracy Stream continues to conjure in multiple forums.  The thrust of Stream's claims here is that Mr. Stastney exploited his positions as Stream CFO and member of its Board of Directors to bring about and exploit Stream's default.

The Complaint is not only rife with misrepresentations, it makes critical (and purposeful) omissions as well.  Most importantly as concerning the claims against Mr. Stastney, Stream conceals from the Court that, on January 30, 2020, it entered into an Agreement with Mr. Stastney and SLS pursuant to which it waived any and all claims against Mr. Stastney "whether direct or indirect, arising from circumstances related in any way to payments and services of Stastney" (the "Stastney/Stream Settlement Agreement") (A true and accurate copy of the Stastney/Stream Settlement Agreement is attached hereto as **Exhibit A**).

At paragraphs 63 and 64 of the Complaint, Stream blatantly misrepresents the facts and circumstances of Mr. Stastney's constructive discharge from Stream in an effort to manufacture breach of fiduciary duty claims against him.  Stream represents to the Court:

- Scheme Defendants' misconduct continued well after Stastney (finally) resigned as Stream's Vice Chairman of the Board and Chief Financial Officer of January 30, 2020.

- Upon his resignation, and in violation of his fiduciary duties, Stastney offered to extend the due dates of the SLS Notes to March 1, 2020, *but only if* Stream made a lump sum payment of $202,500 to him personally by February 7, 2020.  Stastney also offered to continue extending the SLS Notes, so long as he was paid his annual salary of $360,000 through December 31, 2021 (despite the relinquishing of his responsibilities toward Stream).  Stream ultimately paid an additional $28,987.76 to Stastney.

Compl. ¶¶ 63-64 (emphasis in original).

The truth is, of course, much different.  On January 30, 2020, Mr. Stastney submitted to Stream his Notice of Constructive Termination Without Cause (the "<u>Stastney Notice</u>").  The Stastney Notice set forth that Stream's efforts to freeze Mr. Stastney out of all decision-making at Stream constituted his constructive discharge and termination without cause in violation of his employment agreement.  That same day, Mathu Rajan signed on behalf of Stream the Stastney/Stream Settlement Agreement, through which Stream, Mr. Stastney and SLS resolved the issues raised in the Notice.  As part of the Stastney/Stream Settlement Agreement, Stream agreed to make a number of payments to Mr. Stastney in exchange for extension of the SLS Notes and mutual waivers between the parties.  Importantly, Section 2 of the Stream/Stastney Settlement Agreement provides:

> <u>Mutual Waiver</u>.  All Parties, for themselves, their subsidiaries and affiliates, their successors, assigns, directors, parents, shareholders, employees, insurers, agents, and representatives, do ***hereby waive*** all other Parties, their successors, assigns, directors, parents, shareholders, employees, insurers, agents, and representatives, from any and ***all claims, controversies, causes of action, judgments, liabilities, losses, damages, costs, expenses, charges, taxes or***

> ***attorneys' fees, whether direct or indirect, arising from
> circumstances related in any way to payments and service of
> Stastney***. The Parties agree and acknowledge that this Agreement is
> executed for the sole purpose of amicably settling outstanding
> matters. It is also expressly agreed and acknowledged that the
> execution or performance of any term of this Agreement shall not
> constitute or be construed as an admission of any liability or fault or
> any indication that any of the claims or defenses relating to the
> outstanding matters have any merit.

Stream/Stastney Settlement Agreement § 2 (emphasis added).  That is, Stream agreed to a blanket

waiver of any claims against Mr. Stastney arising from his services on behalf of Stream as its CFO

and board member, including most of the claims asserted against Mr. Stastney in the Complaint.

The Stream/Stastney Settlement Agreement further dictates that that it shall be governed by

Delaware law and that the Parties – SLS, Stream and Shad – "consent[] to the exclusive jurisdiction

of the courts of the State of Delaware USA and any federal court sitting in Wilmington, Delaware

USA." *Id.* § 7.

## III.   LEGAL STANDARD

### A.     Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780,

786 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted)).

The requirement of plausibility "asks for more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678.  An inference of wrongdoing is not plausible where, based

on the facts alleged in the complaint, the "more likely" or "obvious alternative" explanation is that

the defendant's conduct was lawful.  *Id.* at 681-82; *see also In re Heartland Payment Sys., Inc.*

*Sec. Litig.*, Civ. No. 09-1043, 2009 U.S. Dist. LEXIS 114866, at *8 (D.N.J. Dec. 7, 2009) ("[I]f

the factual allegations are more likely explained by lawful behavior than illegal activity, then the

complaint should be dismissed."). Also, in determining well-pleaded allegations, the Court need

not accept as true allegations that are contrary to fact that were decided in proceedings with

preclusive effect upon the Plaintiff. *Alexander v. Nat'l Fire Ins.*, 454 F.3d 214, 224 (3d Cir. 2006).

Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (plaintiffs must plead facts "to raise a right to relief above the speculative

level"). When assessing a motion to dismiss under Rule 12(b)(6), "the factual and legal elements

of a claim should be separated. The District Court must accept all of the complaint's well-pleaded

facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d

203, 210-11 (3d Cir. 2009). "[A] complaint must do more than allege the plaintiff's entitlement

to relief. A complaint has to '*show*' such an entitlement with its facts." *Id.* at 211 (quoting *Phillips*

*v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)) (emphasis added).

## IV.    ARGUMENT

### A.    The Complaint Should Be Dismissed Because Stream Has Waived its Claims Against Mr. Stastney

"To determine whether a release covers a claim, 'the intent of the parties as to its scope

and effect are controlling, and the court will attempt to ascertain their intent from the overall

language of the document.'" *Jordan v. Mirra*, Civil Action No. 14-1485-GAM, 2017 U.S. Dist.

LEXIS 149034, at *23 (D. Del. Sep. 14, 2017) (quoting *Corporate Prop. Assocs. 6 v. Hallwood*

*Grp. Inc.*, 817 A.2d 777, 779 (Del. 2003)). "Under Delaware law, a general release . . . covers all

claims, whether or not they were anticipated." *Id.*; *see also Hob Tea Room v. Miller*, 89 A.2d 851,

856 (Del. 1952) ("[T]he concept of a general release ... is intended to cover everything—what the

parties presently have in mind, as well as what they do not have in mind, but what may,

nevertheless, arise."); *Conley v. Dan-Webforming Int'l A/S, Ltd.*, Civil Action No. 91-401 MMS, 1992 U.S. Dist. LEXIS 20251, at *30, 32 (D. Del. Dec. 29, 1992) (holding that a fraud-based claim relating to "acts and deeds . . . unknown at the time of settlement" were barred by a general release).

The release contained in the Stream/Stastney Settlement Agreement is a general release that mutually discharges Mr. Stastney and Stream, as well as their subsidiaries and affiliates, their successors, assigns, etc. from any claims, losses, damages, etc. "arising from circumstances related in any way to payments and service of Stastney."  Stream/Stastney Settlement Agreement § 2. Courts have interpreted similar language to "demonstrates the parties' intent to enter into a broad, mutual release of all claims [referenced in the release]." *Jordan,* 2017 U.S. Dist. LEXIS 149034, at *24.  Thus, the Stream/Stastney Settlement Agreement release constitutes a waiver of all claims that "relate[] in any way to payments and service of Stastney."

While unclear in many respects,[6] it appears the Complaint asserts the following claims against Mr. Stastney: Count V – Breach of Contract; Count VI – Negligence; Count VII – Tortious Interference with Existing and Prospective Economic Advantage; Count X – Breach of Fiduciary Duty; Count XVII – Misappropriation of Trade Secrets; and Count XVIII – Misappropriation of Trade Secrets.  Count V for breach of contract alleges Mr. Stastney breached his employment agreement while serving as Stream's CFO.  Count VI for negligence alleges Mr. Stastney exploited his CFO and director roles at Stream.  Count VII for tortious interference vaguely asserts that the Defendants generally disrupted Stream's contractual alleged relationship with Google and Bosch. Count X for breach of fiduciary duty alleges that Mr. Stastney breached his fiduciary duties by

---

[6]     Given that Mr. Stastney was not a member of the Board of Directors after January 30, 2020, to the extent that any claims are asserted against the "Director Defendants" – a term only defined in Count VI of the Complaint, *see* ¶ 164 – that  relate to conduct after that date, such claims do not (and cannot) pertain to Mr. Stastney.

interfering with Stream's employees when serving as Stream CFO. Each of these claims arise

from and center on Mr. Stastney's services to Stream as CFO and director and, thus, fall within

the waiver set forth in the Stream/Stastney Settlement Agreement.

Importantly, the Court is empowered to review and rely upon the Stream/Stastney

Settlement Agreement and the waiver set forth in it in adjudicating this motion to dismiss. Courts

are permitted to consider documents outside of the Complaint on a motion to dismiss when such

document is "integral to" or relied upon in the Complaint. *In re Burlington Coat Factory Sec.*

*Litig*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in

the complaint may be considered without converting the motion to dismiss into one for summary

judgment." (internal quotations removed)).

For instance, in *Henderson v. Edens Corporation*, the court allowed the defendant to rely

upon a release agreement on a motion to dismiss after the plaintiff had included exhibits relating

to workers' compensation claims in his complaint but failed to include the final release agreement

relating to those claims. No. 09-1308, 2015 U.S. Dist. LEXIS 110001, at *17 (E.D. Pa. Aug. 20,

2015). The court found it "unfair to [the defendant] to allow [the plaintiff] to use portions of his

workers' compensation record while excluding from consideration other portions of the record. ***A***

***motion to dismiss 'may not be dodged by a plaintiff's cagey inclusion of only a subset of facially***

***related documents*.'" *Id.* (emphasis added) (quoting *Davila v. N. Reg'l Joint Police Bd.*, 979 F.

Supp. 2d 612, 636 (W.D. Pa. 2013) *vacated in part on other grounds*, No. 2:13-cv-70, 2014 U.S.

Dist. LEXIS 102143 (W.D. Pa. July 28, 2014)).

Similarly, in *Nayak v. Voith Turbo, Inc.*, the court allowed the defendant to rely upon a

release agreement on a motion to dismiss where the defendant "ha[d] attached the Release to its

motion and it [wa]s certainly integral to [plaintiff]'s claims in the amended complaint." No. 1:14-

CV-01053, 2017 U.S. Dist. LEXIS 113249, at *16 (M.D. Pa. July 19, 2017). The release was also "only six pages long, excluding exhibits; it [wa]s signed by [plaintiff] and [defendant]; and, [was] clear[] and unambiguous[] . . . ." *Id.* at *17.

Here, Stream plainly relied upon the Stream/Stastney Settlement Agreement to craft its allegations concerning Mr. Stastney's departure from Stream, upon which it purports to base its claim for breach of fiduciary duty. The Court should, therefore, dismiss Counts V, VI, VII and X of the Complaint as waived through the Stream/Stastney Settlement Agreement.

**B.     The Doctrine of Collateral Estoppel Bars Stream's Claims**

For the reasons stated in SeeCubic's Motion, Stream Complaint should be dismissed with prejudice based upon the doctrine of collateral estoppel. *See* SeeCubic Motion at § II.A. Mr. Stastney hereby joins in and adopts by reference said bases for dismissal set forth in SeeCubic's Motion as though fully restated herein.

### C.      This Action Should Be Dismissed or in the Alternative Transferred Pursuant to the First-Filed Doctrine[7]

For the reasons stated in SeeCubic's Motion, Stream Complaint should be dismissed with prejudice based upon the first-filed doctrine.  *See* SeeCubic Motion at § II.B.  Mr. Stastney hereby joins in and adopts by reference said bases for dismissal set forth in SeeCubic's Motion as though fully restated herein.

---

[7]   As is evident by the tortured procedural and factual history of this case, Stream's many machinations of this action have spanned numerous jurisdictions and legal systems.  Stream has done so in direct contradiction of its own governing document, which mandates that the Court of Chancery "shall be the sole and exclusive forum for … any action asserting a claim of breach of fiduciary duty owed by any director … to the Company or the Company's shareholders."  Ex. B, AC §V(D).  The only potential exception to this provision is when "the Company consents in writing to the selection of an alternative forum."  *Id.*  Because this is an "action asserting a claim of breach of fiduciary duty" by Stream's former directors, Compl. ¶¶ 192-201, and Stream, rather than a third-party acting with Stream's written consent, unilaterally selected this forum, the Certificate's forum-selection provision requires this action be dismissed.  *Access Care, Inc. v. Sten-Barr Network Solutions, Inc. (In re Access Care, Inc.)*, 333 B.R. 706, 715 (Bankr. E.D. Pa. 2005) (granting transfer of case pursuant to a forum selection clause, but noting that "transfer is only available where a federal forum is identified in the parties' forum selection clause.  *If the only forum identified in the forum selection clause is a state court, the only available remedy is dismissal.*" (emphasis added); *see also In re Diaz Contracting*, 817 F.2d 1047, 1055 (3d Cir. 1987) (holding bankruptcy court erred when it failed to dismiss the adversary proceeding pursuant to a valid forum selection clause); *see also* 8 Del. C. §115 (authorizing the use of forum-selection provisions in corporate charters to restrict the fora in which actions for a director's breach of a fiduciary duty may be brought).  And, that Stream may assert that some of the claims are "core," does not alone preclude dismissal of this action given the forum selection clause.  *See In re Access Care, Inc.*, 333 B.R. at 713 ("It would be inefficient for this Court to retain jurisdiction over the 'core' claims while transferring the 'related' claims to the jurisdiction the forum selection clause mandates); *see also Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1162 (3d Cir. 1989) ("[A]ny bankruptcy-related concerns about delay and cost in the enforcement of a forum selection clause are not alone sufficient to overcome the policy favoring enforcement of such clauses, especially in non-core proceedings where *de novo* review is available in the district court.").

**D.      Counts II, XIV, XVI, and XIX Should Be Dismissed Because They Are Not Cognizable Causes of Actions as a Matter of Law**

For the reasons stated in SeeCubic's Motion, Counts II, XIV, XVI, and XIX of the Complaint should be dismissed with prejudice based as they are not cognizable causes of action under the law. *See* SeeCubic Motion at § I. Mr. Stastney hereby joins in and adopts by reference said bases for dismissal set forth in SeeCubic's Motion as though fully restated herein.

**E.      The Complaint Fails to State a Claim Against Mr. StastneyStream's Breach of Contract Claim (Count V) Should Be Dismissed**

While Stream's breach of contract claim is clearly barred by the waiver contained in the Stream/Stastney Settlement Agreement, it must further be dismissed because the Complaint fails to contain adequate allegations to state a claim. Under Pennsylvania law, "a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" *Reid v. Heartland Payment Sys*., No. 17-4399, 2018 U.S. Dist. LEXIS 8627, at *9-10 (E.D. Pa. Jan. 19, 2018) (quoting *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225 (3d Cir. 2003)). Here, the Complaint is devoid of any allegations that demonstrate how the purported breach caused Stream any harm. For example, the Complaint fails to identify any employees that Mr. Stastney recruited or attempted to recruit while he was actually employed by Stream. *See, e.g.*, Compl. ¶ 60 (failing to identify the individuals by name or title that he purportedly "lured" or "attempted to lure"). And, where Stream does provide these details, the conduct is *after* Mr. Stastney was terminated. *See* Compl. ¶ 83 (alleging that Mr. Stastney "confirmed to Crawford that Kabacinski had bribed Franklin Rogers . . . an employee accountant in Stream's finance department, with a position at SCI to obtain confidential Stream investor data."). Without identifying the individuals whom Mr. Stastney allegedly lured, Stream has failed to identify how this purported breach caused Stream

any harm.  Nor has Stream alleged any facts that demonstrate how Mr. Stastney's other breaches of the agreements caused Stream harm.  As such, Count V must be dismissed.

### 2.    Stream's Negligence Claim (Count VI) Should Be Dismissed

Nor has Stream stated a claim for negligence against Mr. Stastney.  First, as noted, the negligence claim is predicated on Stream's claim that Mr. Stastney "owed Plaintiffs a duty of reasonable care and loyalty in connection with [his] role[] as director[], Vice Chairman of Stream's Board, and/or Chief Financial Officer, as well as under the applicable employment agreement." Compl. ¶ 164.  Accordingly, this claim falls squarely within the waiver contained in the Stream/Stastney Settlement Agreement and, therefore, must be dismissed.

Even if not waived, Stream's negligence claim cannot survive the business judgment rule. "The business judgment rule extends to officers and directors of corporations and creates 'a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company." *Freibott v. Miller*, C.A. No. S08C-11-025-RFS, 2009 Del. Super. LEXIS 196, *5-6 (Del. Super. Ct. 2009).  "The business judgment rule does not allow a simple negligence standard to bring a negligence claim against a director; it requires a standard of gross negligence, which is extremely stringent under Delaware law." *Id*.  "While the inquiry of whether the claims amount to gross negligence is necessarily fact-specific, the burden to plead gross negligence is a difficult one." *Zucker v. Hassell*, C.A. No. 11625-VCG, 2016 Del. Ch. LEXIS 180, at *7 (Del. Ch. Nov. 30, 2016) (internal quotation marks omitted).  A finding of gross negligence requires "conduct that constitutes reckless indifference or actions that are without the bounds of reason." *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008).

The Complaint contains no allegations approaching the standards necessary to maintain a negligence claim against Mr. Stastney for conduct engaged in as an officer and director of Stream.

Indeed, the Complaint sets forth virtually no specific facts substantiating this claim, beyond generically repeating at various points throughout the Complaint that "Scheme Defendants" and/or "Director Defendants" "disrupted governance of the board," Compl. ¶ 3, "interfered with the ownership and governance of the wholly owned subsidiaries of the Debtors," *id.* at ¶ 5, and "implement[ed] a scheme to force a reorganization of Stream," (*id*. at ¶ 56).  As to the latter alleged "scheme," Stream refers to efforts to resolve Stream's defaults under their secured creditors' notes that, ultimately, resulted in negotiation and execution of the Omnibus Agreement – events the Chancery Court already held were good faith efforts to resolve Stream's defaults.  *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 250 A.3d 1016, 1022 (Del. Ch. 2020) ("The business judgment rule protects the Resolution Committee's[8] decision to enter into the omnibus agreement."); *see also id.* at 1045-46.

### 3.    Stream's Tortious Interference Claim (Count VII) Should Be Dismissed

As noted in SeeCubic's Motion, Stream's claims for tortious interference are barred by Pennsylvania's two-year statute of limitations.  *See* SeeCubic Motion at § III.A.1; *see also* Pa.C.S.A. § 5524; *Daimler Trust v. Weng*, No., No. 22cv1082, 2023 U.S. Dist. LEXIS 96902, at *11 (W.D. Pa. May 31, 2023) ("Pennsylvania courts apply the two-year statute of limitations of 42 Pa.C.S.A. § 5524(3) to tortious interference with contractual relations claims.").  Given that Stream's claims are alleged to have accrued in April 2020[9] (ToJoy, Compl. ¶ 72), February 2021

---

[8]    The Resolution Committee was comprised of Outside Directors Kevin Gollop and Asaf Gola. *Stream TV Networks,* 250 A.3d at 1024.

[9]    Notably, there are no allegations in the Complaint that link Mr. Stastney to the purported interference with ToJoy. *See* Compl. ¶¶ 71-72.  Thus, to the extent that Stream's claim against Mr. Stastney is premised on this alleged prospective contract it must be dismissed.

(Google, Compl. ¶124); and *at the latest* December 2022[10] (Bosch, Compl. ¶¶ 94, 123), Count VII

is time barred and must be dismissed.  Moreover, to the extent that Stream's claims are premised

upon its group pleading, Compl. ¶¶ 170-77, such allegations are insufficient to meet its burden.

*See Abreu v. SCI Greene State Corr. Inst*., No. 5:23-cv-01092, 2023 U.S. Dist. LEXIS 58854, at

\*13 (E.D. Pa. Apr. 4, 2023) (A "group pleading in which all the Defendants are lumped together

does not provide [the defendants] notice of the claims against [them] and the grounds upon which

those claims rest." (*quoting Mazure v. Remington Arms Co*., No. 2:22-cv-02854 (WJM), 2022 U.S.

Dist. LEXIS 117631, at \*6-8 (D.N.J. July 5, 2022))); *Cupp v. Cty. of Lycoming*, No. 3:20-cv-

001784, 2021 U.S. Dist. LEXIS 188866, at \*13 (M.D. Pa. Sep. 30, 2021) (A pleading grouping

"defendants together without setting forth what each particular defendant is alleged to have done,

is impermissibly vague.").

> **a.    Even if not time-barred, Stream fails to adequately plead the elements of a tortious interference claim**

To state a claim for tortious interference, Stream must plausibly allege:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs*., 561 F.3d 199, 212 (3d Cir. 2009); *see also Krafft v.*

*Shenango, Inc.*, No. 2:13-cv-320, 2014 U.S. Dist. LEXIS 30804, at \*5 n.1 (W.D. Pa. Mar. 10,

---

[10]    Oddly, the Complaint is devoid of any facts regarding *when* the Bosch contract was allegedly terminated.

2014) (noting claims of tortious interference with contract require conformity with Rule 9's heightened pleading requirements). Here, Stream has failed to meet its burden.

### b. Stream fails to adequately allege the existence of a prospective contractual or economic relationship with a third party

As SeeCubic asserts in its Motion, Stream has failed to allege sufficiently that a prospective contractual relationship existed. *See* SeeCubic Motion at § III.A.2(a). Stream's hopes that its past contractual relationships with Google would result in future contracts are insufficient as a matter of law to plead a future expectancy. *See Phillips v. Selig*, 959 A.2d 420, 428-29 (Pa. Super. 2008); *see also Acumed LLC,* 561 F.3d at 213 (a plaintiff must demonstrate a "reasonable likelihood" that the future contract will materialize, which requires "something less than a contractual right but more than a mere hope that there will be a future contract. . . . Furthermore, a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship."). Nor are the preliminary negotiations that Stream alleges that it had with Google sufficient to state a claim. *See Arsenal v. Ammons*, No. 14-1289, 2017 U.S. Dist. LEXIS 160243 , at *28-29 (E.D. Pa. Sept. 28, 2017). Further the Complaint fails to allege that Stream had any contractual relationship – future or current – with Bosch. Rather, the contractual relationship the Complaint alleges existed was with Stream TV International, BV, which is not a party to this action. Compl. ¶ 41. This is insufficient.

      **c.**      **Stream fails to allege that Mr. Stastney acted without privilege or justification**[11]

Under Pennsylvania law "the plaintiff, as part of his *prima facie* case, [must] show that the defendant's conduct was not justified." *Acumed LLC*, 561 F.3d at 214 (collecting cases).  And "to plead adequately a tortious interference claim, a plaintiff must plead that the defendant crossed the line from capitalistic self-interested behavior to unfair conduct."  *Ferrone v. Huntington Bankshares Inc.*, No. 1279-WDA-2016, 2017 Pa. Super. Unpub. LEXIS 3042, at *12-13 (Pa. Super. Ct. Aug. 11, 2017).  Stated differently, Stream must plead that Mr. Stastney used "wrongful means" in effectuating the alleged interference; such "wrongful means" requires pleading "independently actionable" conduct.  *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 388-89 (3d Cir. 2004).  As noted above and below, Stream fails to state a claim against Mr. Stastney for any other allegedly wrongful conduct.  *See infra* Sections IV.E.1 and 2.; *supra* Section IV.E.4.

Moreover, Stream fails to allege that Mr. Stastney – acting as a principal of SeeCubic – took any actions that were not justified or without privilege.  Indeed, as SeeCubic notes in its Motion, the actions that Mr. Stastney purportedly took of which Stream complains were all taken *after* the Court of Chancery issued its preliminary injunction, and in reliance upon that holding which found that the Omnibus Agreement was valid, thereby permitting SeeCubic to control and therefore, manage Stream's assets.  *See* SeeCubic Motion at § III.A.2(b).

---

[11]  Stream's allegations that "Defendants' actions to interfere with the [Google and Bosch relationships] were intentional, purposeful and without justification on the part of Defendants," Compl. ¶¶ 171, 175, are merely the type of formulaic recitations of the cause of action that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 545, 555 (2007) held to be insufficient to meet a plaintiff's pleading burden.

Given that Mr. Stastney was acting pursuant to a court order, his actions were privileged, justified and *not* unlawful. Indeed, numerous courts have concluded that where a plaintiff has alleged an intentional tort, or similar claims, that actions taken pursuant to a court order are justified. *See, e.g.*, *Easter v. City of Dallas Probate Division*, No. 3:21-CV-0860-D (BH), 2022 U.S. Dist. LEXIS 133343, at *26-29 (N.D. Tex. June 27, 2022) (property transferred pursuant to court order could not be subject of conversion claim); *Singleton v. Cannizzaro*, 372 F. Supp. 3d 389, 411 (E.D. La. 2019) (no Fourth Amendment violation by prosecutors for meeting with a witness when the meeting was held pursuant to a court order); *Slaieh v. Simons*, 584 B.R. 28, 42-43 (Bankr. C.D. Cal. 2018) (no violation of California unfair competition statute related to bankruptcy trustee's sale of estate property where sale was done pursuant to order from the bankruptcy court).[12] This is so *even if*, as here, the relevant court order is later vacated. *See In re M.T.G.*, 646 B.R. 1, 178-79 (Bankr. E.D. Mich. 2022) (no violation of automatic stay where the actions complained up "were authorized by the Court's order *at the time they took such actions*. The actions of Taunt and his attorneys did not retroactively become stay violations when the Court vacated those orders many years later.") (emphasis in original).

Thus, while Stream may neither like nor agree with the actions that Stastney took with regard to the Google and Bosch agreements, that alone does not render them without justification or privilege. Rather, Stream's Complaint is devoid of any factual allegations to meet its burden to meet this element of the claim.

As such, Count VII should be dismissed.

---

[12]    *See also Whitehead v. Allied Signal*, No. 98-6305, 1998 U.S. App. LEXIS 31428, at *7 (10th Cir. Dec. 16, 1998) ("It is a general rule of tort law that court orders validate actions that would otherwise constitute intentional property such as conversion and trespass.").

####    4.    Stream's Breach of Fiduciary Duty Claim (Count X) Should Be Dismissed

To the extent that Stream's tenth count purports to assert a claim for breach of fiduciary duty against Stastney based upon the theory that Stastney did not "conduct himself in a manner he reasonably believed to be in the best interest of Stream," Compl. ¶194, and "attempted to separate key employees from Stream's management . . . and seized and attempted to assert control of Stream's assets by virtue of the Omnibus Agreement and corresponding Letter Agreement," (*id.* ¶ 195), this claim must fail.

*First*, as noted above, Stream has waived "any and all claims" that "aris[e] from circumstances related in any way to payments and service of Stastney."   Stastney/Stream Settlement Agreement § 2.  As such, Stream cannot premise its claims against Mr. Stastney on any conduct that occurred during his employment.  Because the actions that form the basis of this claim – namely the allegations that Mr. Stastney acted against the best interest of Stream while an officer or director – fall within the scope of the waiver, Stream's fiduciary duty claim is barred and must be dismissed.[13]  *Cygnus Opportunity Fund, LLC v. Wash. Prime Grp., LLC*, No. 2022-0718-JTL, 2023 Del. Ch. LEXIS 227, at *16 (Del. Ch. Aug. 9, 2023) (granting a motion to dismiss a breach of fiduciary claim against members of an LLC's Board and a Senior V.P. because an "[a]greement contain[ed] a fiduciary duty waiver which provides that the members of the Board and SVP do not owe any fiduciary duties"); *Avgiris Bros., LLC v. Bouikidis*, No. 2021-0741-LWW, 2022 Del. Ch.

---

[13]    Even if the claims were not waived – which they are – any claims that arose during Mr. Stastney's employment are time barred regardless of whether the Court applies Delaware's three-year statute of limitations, *see Dubroff v. Wren holdings, LLC*, 2011 WL 5137175, at *12 (Del. Ch. Oct. 28, 2011), or Pennsylvania's two-year period, 42 Pa. C.S.A. § 5525.  It is undisputed that the Complaint here was filed on August 12, 2023, well outside of either statutory period.  As such, this claim must be dismissed.

LEXIS 282, at *32 n.158 (Del. Ch. Sep. 30, 2022) (noting that an "LLC Agreement waived all fiduciary duties" against plaintiffs).

*Second*, to the extent that this claim is premised upon conduct that occurred *after* Mr. Stastney left Stream's employ and ceased being a Stream director, this conduct cannot form the basis of a claim. *See In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 758 (Del. Ch. 2005) ("Just as Delaware law does not require directors-to-be to comply with their fiduciary duties, former directors owe no fiduciary duties . . . .").

*Third,* the doctrine of collateral estoppel precludes Stream from maintaining this claim because the Court of Chancery already ruled – repeatedly – that the directors who voted in favor of the Omnibus Agreement (again, which occurred *after* Mr. Stastney was no longer on Stream's board), "believed the Omnibus Agreement to be in the best interests of Stream and its stockholders … because it prevented Stream's creditors from foreclosing on all of its assets and leaving Stream and its stockholders with nothing." *Stream TV Networks*, 250 A.3d at 1046; *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL, 2022 Del. Ch. LEXIS 343, at *44 (Del. Ch. Nov. 29, 2022) ("[W]ithout the Omnibus Agreement, Stream and its shareholders would have been left with nothing.").

Fourth, as noted in discussing Stream's deficient negligence claim above, Stream has alleged no facts whatsoever to counter that Mr. Stastney's actions taken while an officer and director of Stream were reasonable efforts to guide Stream through its admitted financial challenges and multiple defaults of secured notes, which, as noted, the Delaware Chancery Court has already held. *See Stream TV Networks*, 250 A.3d at 1025-26 ("Without the Omnibus Agreement, Stream's creditors would have foreclosed on Stream's assets, leaving its equity

investors with nothing.  Or Stream would have filed for bankruptcy, and its equity investors likely would have been wiped out.").

Thus, to the extent that the Complaint purports to assert a claim against Mr. Stastney for the breach of fiduciary duty, Count X must be dismissed.[14]

### 5. Stream's Misappropriation of Trade Secrets Claims (Counts XVII & XVIII) Should be Dismissed

For the reasons stated in SeeCubic's Motion, Stream's Claims of misappropriation of trade secrets, as contained in Counts XVII and XVIII should be dismissed with prejudice.  *See* SeeCubic Motion at § III.C.  Mr. Stastney hereby joins in and adopts by reference said bases for dismissal set forth in SeeCubic's Motion as though fully restated herein.

---

[14]   Curiously, Count XI purports to assert a claim of aiding and abetting breach of fiduciary duty against Mr. Stastney.  However, as Paragraphs 204 and 205 make clear, this claim is premised upon a purported breach of the fiduciary duty by Mr. Stastney himself.  However, an individual "cannot aid and abet [his] own unlawful conduct."  *Hewitt v. BS Transp. of Ill., LLC*, 355 F. Supp. 3d 227, 238-39 (E.D. Pa. 2019).  As such, Count XI must be dismissed as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, Mr. Stastney respectfully requests that the Court dismiss the

Complaint with prejudice as against Mr. Stastney.


Respectfully Submitted,


Dated: November 13, 2023                    **BALLARD SPAHR, LLP**


/s/ *Margaret A. Vesper*
Tobey M. Daluz (No. 60685)
Terence M. Grugan (No. 307211)
Emilia McKee Vassallo (No. 318428)
Margaret A. Vesper (No. 329793)
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 665-8500
Facsimile: (215) 864-8999
E-mail: daluzt@ballardspahr.com
         grugant@ballardspahr.com
         mckeevassalloe@ballardspahr.com
         vesperm@ballardspahr.com

*Counsel for Defendant Shadron L. Stastney*