## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br>Stream TV Networks, Inc.,[1]<br><br>Debtor. | Chapter 11<br>Bankruptcy No. 23-10763-mdc |
| In re:<br>Technovative Media Inc.,<br><br>Debtor. | Chapter 11<br>Bankruptcy No. 23-10764-mdc<br><br>(Jointly Administered) |
| Stream TV Networks, Inc., et al.<br>　　　　　Plaintiffs,<br><br>v.<br><br>Shadron L. Stastney, et al.<br>　　　　　Defendants. | Adversary No. 23-00057-mdc |

## SLS HOLDINGS VI, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6), 9(b), and 8(a)

---

[1] Plaintiffs or Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (…4092) and Technovative Media, Inc. (…5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 2

      A.    Plaintiffs And The Rajans Employ "Litigation Chaos" To Thwart
           Stream's Creditors Following Stream's Defaults On Approximately
           $60MM in Loans ........................................................................................... 2

      B.    Stream Enters Into An Agreement With Stastney And SLS,
           Acknowledging The SLS Notes And Waiving Its Claims And The
           Claims Of Its Subsidiaries Against Stastney And SLS ..................................... 2

ARGUMENT ...................................................................................................................... 4

I.     Introduction ............................................................................................................ 4

II.    Legal Standard ....................................................................................................... 4

III.   Dismissal Under Rule 12(b)(6) Is Warranted ......................................................... 6

      A.    Counts II, XIV, XVI, and XIX are not causes of action ................................ 6

      B.    Plaintiffs are barred from relitigating their claims........................................... 6

      C.    Plaintiffs waived their claims against SLS and Stastney ................................ 9

      D.    Plaintiffs otherwise fail to state a claim against SLS..................................... 10

           1.     Turnover and Accounting (Count I) ............................................ 10

           2.     Injunctive Relief (Count II) ........................................................ 11

           3.     Disallowance of Claims (Count III)............................................. 11

           4.     Equitable Subordination (Count IV) ............................................ 12

           5.     Breach of Contract (Count V)..................................................... 14

           6.     Negligence (Count VI)................................................................ 14

           7.     Tortious Interference (Count VII)................................................ 15

           8.     Recharacterization of Loan as Equity (Count VIII)..................... 16

           9.     Fraudulent Conveyance (Count IX)............................................. 16

           10.    Breach of Fiduciary Duty (Count X) ........................................... 16

           11.    Aiding and Abetting Breach of Fiduciary Duty (Count XI) ........ 18

           12.    Determination of Secured Status (Count XII) ............................. 19

           13.    Right of Setoff (Count XIII) ........................................................ 20

           14.    Equitable Disallowance (Count XIV).......................................... 21

           15.    Objection to Claims (Count XV) ................................................ 23

## TABLE OF CONTENTS

**Page**

16. Exemplary Damages (Count XVI).............................................. 23

17. Misappropriation of Trade Secrets under Federal Law and
State Law (Counts XVII and XVIII) ........................................... 23

18. Lender Liability (Count XIX).................................................... 24

IV. The Complaint Should Be Dismissed Under Rule 9(b)............................................. 24

V. The Complaint Should Be Dismissed Under Rule 8(a)............................................. 27

CONCLUSION........................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abreu v. SCI Greene State Corr. Inst.*,
  2023 WL 2772136 (E.D. Pa. Apr. 4, 2023)........................................................ 29, 30
*Acumed LLC v. Advanced Surgical Servs., Inc.*,
  561 F.3d 199 (3d Cir. 2009) ........................................................................ 16
*Adena, Inc. v. Cohn*,
  162 F. Supp. 2d 351 (E.D. Pa. 2001)............................................................ 19
*Advanced Fluid Sys., Inc. v. Huber*,
  2017 WL 2445303 (M.D. Pa. June 6, 2017)................................................... 19
*Am. Inst. for Chartered Prop. Cas. Underwriters v. Posner*,
  2020 WL 12968360,n.3 (E.D. Pa. Apr. 27, 2020)......................................... 19
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 5, 14
*Assocs. Com. Corp. v. Rash*,
  520 U.S. 953 (1997) ...................................................................................... 20
*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*,
  405 F.Supp. 370 (M.D. Pa. 1975).................................................................. 6
*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*,
  544 F.2d 1207 (3d Cir.1976) ......................................................................... 6
*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .......................................................................... 5, 13, 16
*Bioquell, Inc. v. Feinstein*,
  2010 WL 4751709 (E.D. Pa. Nov. 23, 2010) ................................................ 15
*Blue Line Coal Co., Inc. v. Equibank*,
  683 F. Supp. 493 (E.D. Pa. 1988)................................................................. 17
*Brill v. Burlington Northern, Inc.*,
  590 F.Supp. 893 (D. Del. 1984) ..................................................................... 6
*Brown Brown, Inc . v. Cola*,
  745 F.Supp.2d 588 (E.D. Pa. 2003)............................................................. 18
*Burtch v. Ganz*,
  405 B.R. 148 (E.D. Pa. 2009) ....................................................................... 11
*California Pub. Emp. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) ..................................................................... 24, 25
*Chancery PI Opinion*,
  250 A.3d 1016 (Del. Ch. Dec. 8, 2020)........................................................... 7
*Chester Cnty. Intermediate Unit v. Pennsylvania Blue Shield*,
  896 F.2d 808 (3rd Cir. 1990).......................................................................... 6
*Citicorp Venture Cap. v. Comm. of Creditors Holding Unsecured Claims*,
  160 F.3d 982 (3d Cir. 1998)........................................................................... 22
*Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*,
  323 F.3d 228 (3d Cir. 2003) .......................................................................... 13
*Connelly v. Lane Constr. Corp.*,
  809 F.3d 780 (3d Cir. 2016) ........................................................................... 5

*Creditors of Melon Produce, Inc. v. Braunstein*,
  112 F.3d 1232 (1st Cir. 1997)............................................................................ 12
*Cupp v. Cty. of Lycoming*,
  2021 WL 4478304 (M.D. Pa. Sep. 30, 2021)..................................................... 29
*Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*,
  209 F.3d 252 (3d Cir. 2000) ............................................................................. 21
*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ............................................................................... 5
*Fuhrman v. Mawyer*,
  2023 WL 5672314 (M.D. Pa. Sept. 1 2023)................................................. 28, 30
*Goldstein v. Wolfson*,
  132 F.2d 624 (2nd Cir. 1953) ............................................................................ 22
*Harrison v. Ocwen Loan Servicing, LLC*,
  2018 WL 4635969 (M.D. Pa. Sept. 27, 2018)................................................... 24
*Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*,
  2022 WL 17258460 (Del. Ch. Nov. 29, 2022) ................................................ 7, 8
*Humana, Inc. v. Indivior, Inc.*
  Nos. 21-2573 & 21-2574, 2022WL17718342 (3d Cir. Dec. 15, 2022)............... 24
*In re Avandia Marketing, Sales Practices and Products Liability Litigation*,
  2013 WL 4828225 ............................................................................................. 9
*In re Beach*,
  447 B.R. 313 (Bankr. D. Idaho 2011) ............................................................... 20
*In re Commonwealth Renewable Entergy, Inc.*,
  540 B.R. 173 (Bankr. W.D. Pa. 2015)................................................................ 13
*In re Congoleum Corp.*,
  2007 WL 4571086 (Bankr. D.N.J. Dec. 28, 2007)........................................ 21, 22
*In re Hercules Offshore, Inc.*,
  565 B.R. 732 (Bankr. D. Del. 2016).................................................................. 22
*In re Heritage Highgate, Inc.*,
  679 F.3d 132 (3d Cir. 2012) ............................................................................. 20
*In re Irwin*,
  509 B.R. 808 (Bankr. E.D. Pa. 2014) ................................................................ 11
*In re Island View Crossing II, L.P.*,
  604 B.R. 181 (Bankr. E.D. Pa. 2019) ................................................................ 14
*In re Jamuna Real Estate, LLC*,
  416 B.R. 412 (Bankr. E.D. Pa. 2009) ................................................................ 19
*In re Lids Corp.*,
  260 B.R. 680 (Bankr. D. Del. 2001)................................................................... 12
*In re LightSquared Inc.*,
  504 B.R. 321 (Bankr. S.D.N.Y. 2013)................................................................ 22
*In re M. Paolella & Sons, Inc.*,
  161 B.R. 107 (E.D. Pa. 1993)............................................................................ 13
*In re Mushroom Transp. Co.*,
  388 F. App'x 204 (3d Cir. 2010 ........................................................................ 11
*In re Nat'l Med. Imaging, LLC*,
  627 B.R. 73 (Bankr. E.D. Pa. 2021) .............................................................. 12, 14

*In re Red Rock Servs. Co., LLC*,
    480 B.R. 576 (Bankr. E.D. Pa. 2012) ........................................................................ 21
*In re Rockefeller Center Properties, Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ...................................................................................... 25
*In re Suarez*,
    625 B.R. 508 (Bankr. D.N.M. 2020) .......................................................................... 20
*In re Trinity Innovative Enterprises, LLC*,
    2010 WL 5462495 (Bankr. E.D. Pa. Dec. 27, 2010) ................................................. 11
*In re Walt Disney Co. Deriv. Litig.*,
    907 A.2d 693 (Del. Ch. 2005) .................................................................................... 18
*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996) ("The second amended ................................................. 27
*In re Winstar Commc'ns, Inc.*,
    554 F.3d 382 (3d Cir. 2009) ...................................................................................... 12
*IQVIA, Inc. v. Breskin*,
    2023 WL 2588450 (E.D. Pa. Mar. 20, 2023) ............................................................ 15
*Keyter v. Air India Officers*,
    2010 WL 4226508 (D. Del. Oct. 19, 2010) ............................................................... 27
*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004) ......................................................................... 24, 25, 26
*Mack v. Municipality of Penn Hills*,
    547 F. Supp. 863 (W.D. Pa.1982) ............................................................................... 6
*Mann v. Boatwright*,
    477 F.3d 1140 (10th Cir. 2007) ................................................................................. 27
*Matter of Mobile Steel Co.*,
    563 F.2d 692 (5th Cir. 1977) .................................................................................... 22
*Mayor and Council of Borough of Rockaway v. Klockner & Klockner*,
    811 F. Supp. 1039 .................................................................................................... 26
*Mazure v. Remington Arms Co.*,
    2022 WL 2439196 (D.N.J. July 5, 2022) .................................................................. 29
*McNeil v. U.S.*,
    508 U.S. 106 (1993) .................................................................................................. 27
*Mobley v. Wetzel*,
    2015 WL 1511896 (M.D. Pa. Mar. 31, 2015) ..................................................... 27, 30
*Moravian Dev. Corp. v. Dow Chem. Co.*,
    651 F. Supp. 144 (E.D. Pa. 1986) ....................................................................... 26, 27
*Perlberger Law Assocs., P.C. v. Wells Fargo Bank, N.A.*,
    552 F. Supp. 3d 490 (E.D. Pa. 2021) ........................................................................ 17
*Perry v. Oxford Law, LLC*,
    2012 WL 3731802 (E.D. Pa. Aug. 29, 2012) ....................................................... 13-14
*Pfizer Inc. v. Elan Pharmaceutical Research Corp.*,
    812 F.Supp. 1352 (D. Del. 1993) ................................................................................ 6
*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ............................................................................ 5, 25, 27
*Rycoline Products, Inc. v. C & W Unlimited*,
    109 F.3d 883 (3rd Cir. 1997) .................................................................................. 5-6

*Seville Indus. Mach. Corp v. Southmost Mach. Corp.*,
  742 F.2d 786 (3d Cir. 1984) ......................................................................... 25
*Snyder v. Dietz & Watson, Inc.*,
  837 F. Supp. 2d 428 (D.N.J 2011) ............................................................... 26
*Stainton v. Tarantino*,
  637 F. Supp. 1051 (E.D. Pa. 1986) ............................................................. 17
*Stream TV Networks, Inc. v. SeeCubic, Inc.*,
  No. 2020-07 (Del. Ch. 2020) ......................................................................... 7
*Stream TV Networks, Inc. v. SeeCubic, Inc.*,
  279 A.3d 323 (Del. 2022) ........................................................................... 7, 8
*Stream TV Networks, Inc. v. Stastney*,
  22-cv-00851-CJB (D. Del. June 22, 2022) ..................................................... 8
*Synthes, Inc. v. Emerge Med., Inc.*,
  25 F. Supp. 3d 617 (E.D. Pa. 2014) ............................................................. 19
*Temp-Way Corp. v. Cont'l Bank*,
  139 B.R. 299 (E.D. Pa. 1992) ...................................................................... 17
*Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*,
  549 U.S. 443 (2007) ..................................................................................... 22
*Tredennick v. Bone*,
  323 F. App'x. 103 (3d Cir. 2008) ................................................................. 26
*Tyler v. O'Neill*,
  52 F. Supp. 2d 471 (E.D. Pa. 1999) ............................................................... 5
*U.S. Healthcare v. Blue Cross of Greater Phila.*,
  898 F.2d 914 (3d Cir.1990) .......................................................................... 15
*Williams v. Medley Opportunity Fund II, LP*,
  965 F.3d 229 (3d Cir. 2020) ......................................................................... 25

## **Statutes**

11 U.S.C. 502(d) ...................................................................................... 11, 12
11 U.S.C. § 502(a) ......................................................................................... 20
11 U.S.C. § 502(b) ......................................................................................... 22
11 U.S.C. § 502(b)(1)–(9) .............................................................................. 22
11 U.S.C. § 510(c) .............................................................................. 14, 21, 22
11 U.S.C. § 510(c)(1) ..................................................................................... 12
11 U.S.C. § 558 .............................................................................................. 20
11 U.S.C. § 1111(a) ....................................................................................... 23
18 U.S.C. § 1832 ............................................................................................ 23

## **Rules**

Fed. R. Bankr. P. 3001(f) ............................................................................... 20
Fed. R. Bankr. P. 7009 ................................................................................... 25
Fed. R. Civ. P. 8(a)(2) .................................................................................... 27
Fed. R. Civ. P. 8(d)(1) .................................................................................... 27
Fed. R. Civ. P. 9(b) .................................................................................... 24-27
Fed. R. Civ. P. 12(b)(6) ................................................................................ 5,6

## <u>Other Authorities</u>

5 Charles A. Wright & Arthur R. Miller,
  *Federal Practice and Procedure* § 1327 (1990) ........................................................................ 6
5 Charles A. Wright & Arthur R. Miller,
  *Federal Practice and Procedure, Civ. 3d* § 1217 (2023) ......................................................... 27

Defendant SLS Holdings VI, LLC ("SLS") respectfully submits this *Memorandum of Law in Support of its Motion to Dismiss with Prejudice Pursuant to Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8(a)*.

## PRELIMINARY STATEMENT

Plaintiffs advance a fiction that is, contrary to the old adage, stranger than the truth. The truth is rather straightforward: Stream incurred tens of millions of dollars of debt, Stream defaulted on its obligations, and SLS is entitled to exercise its rights as a secured lender as a result of those defaults. Plaintiffs' Complaint attempts to obscure this simple reality through allegations of a vast conspiracy between fifteen defendants to deprive Stream of its assets.

Stream has tried this before, and the Delaware Court of Chancery, after thoroughly examining Stream's claims and the evidence, rejected Stream's conspiracy theories and found that Stream defaulted on its secured debt. The Delaware Supreme Court *adopted those findings* on appeal, the Court of Chancery left those factual findings undisturbed on remand, and Stream never appealed those factual findings (either in the first place or after remand). Plaintiffs are barred by collateral estoppel from re-litigating the same factual issues which the Delaware courts have already adjudicated to finality, and the Complaint should be dismissed with prejudice.

That is only one of the principal reasons dismissal with prejudice is warranted. The Complaint raises allegations and suggests some nefarious scheme related to certain arrangements made at the conclusion of Mr. Stastney's tenure on the Board of Stream. What Plaintiffs fail to mention is that those arrangements were the subject of a Severance Agreement in which, among other things, Stream and its subsidiaries (*i.e.* Technovative) released all claims against Mr. Stastney and SLS. Those releases are unambiguous, enforceable, and mandate dismissal of the Complaint with prejudice.

Lastly, Plaintiffs' claims otherwise fail under Rule 12 because they do not state a claim and, in some instances, are not even causes of action. To boot, the Complaint violates Rules 8 and 9 in numerous respects. Plaintiffs' disregard for those Rules should not be viewed as mere technical violations; they are not, and they are indicative of Plaintiffs' efforts—which span multiple jurisdictions and now three bankruptcies—to burden SLS and the other defendants with vexatious and costly litigation. This Court should finally put an end to that conduct and dismiss the Complaint with prejudice.

## **FACTUAL BACKGROUND**

### A.    **Plaintiffs And The Rajans Employ "Litigation Chaos" To Thwart Stream's Creditors Following Stream's Defaults On Approximately $60MM in Loans.**

As set forth more fully in SeeCubic's *Memorandum of Law in Support of its Motion to Dismiss* (the "SeeCubic Memo")[2], this proceeding is yet another effort by Plaintiffs and the Rajans to stymie their creditors—including SLS—from enforcing their rights, following Stream's failure to commercialize its technology. SLS hereby joins in and adopts by reference the Factual Background set forth in the SeeCubic Memo as though such background is fully set forth herein.

### B.    **Stream Enters Into An Agreement With Stastney And SLS, Acknowledging The SLS Notes And Waiving Its Claims And The Claims Of Its Subsidiaries Against Stastney And SLS.**

In addition to the background adopted by reference above, SLS provides the following for the Court's consideration:

In their Complaint, Plaintiffs allege that Stastney resigned as Stream's Vice Chairman of the Board and CFO on January 30, 2020. (Compl., ¶ 63.) Plaintiffs further allege that Stastney made various demands regarding the SLS Notes and payment of monies to Stastney in exchange

---

[2] Hawk's Memorandum of Law and Stastney's Memorandum of Law are referred to herein, respectively, as the "Hawk Memo" and the "Stastney Memo."

for the extension of the SLS Notes' maturity dates.  (*Id.* at ¶ 64.)  Plaintiffs assert that Stastney's

conduct in this regard was "in violation of his fiduciary duties."  (*Id.*).  Plaintiffs concede that

"Stream ultimately paid an additional $28,987.76 to Stastney."  (*Id.*)

Plaintiffs, however, fail to mention that these terms were memorialized in a written

agreement, executed by Stream, SLS, and Stastney, and made effective as of January 30, 2020 (the

"Severance Agreement").  Under the Severance Agreement, Stream: (1) acknowledged the SLS

Notes and Security Agreements (which Plaintiffs do not mention in the Complaint), (2) agreed to

pay Stastney $202,500 by February 7, 2020 (which is alleged in the Complaint) (Compl., ¶ 64),

(3) was afforded an extension of the maturity date of the SLS Notes from February 1, 2020 to

March 1, 2020 (which is alleged in the Complaint) (*id.*), and (4) provided releases and waivers in

favor of Stastney and SLS (which Plaintiffs fail to mention in the Complaint) on its own behalf

and on behalf of its subsidiaries.  A copy of the executed Severance Agreement is attached hereto

as **<u>Exhibit A</u>**.[3]

In other words, Plaintiffs offer self-serving allegations regarding the purported conduct of

SLS (through Stastney), but they fail to expressly acknowledge the Severance Agreement, let alone

attach that agreement to the Complaint, which Stream entered into voluntarily and which is

specifically addressed to their allegations regarding Stastney and SLS.  Plaintiffs want to avoid

bringing to the Court's attention Stream's written acknowledgements and waivers that are

dispositive of their claims.  When a plaintiff refers to an agreement, but does not attach the

agreement to a complaint, the court may properly consider the actual agreement in connection with

---

[3] Plaintiffs filed the Severance Agreement with their Supplemental Memorandum of Law in support of
their TRO Motion.  See Adv. Dkt. 70, Ex. 47.  Thus, Plaintiffs have had the Severance Agreement in their
possession, and there can be no doubt that the arrangements referred to in the Complaint are the same as
those which are memorialized in the Severance Agreement, but Plaintiffs did not attach it to the Complaint.

a Rule 12 motion.  And in this case, doing so is important as a basis for dismissal.  For the reasons

set forth below, the Severance Agreement bars Plaintiffs' claims against Stastney and SLS.

## **ARGUMENT**

### I.    **Introduction**

Plaintiffs assert 16 claims against SLS: (Count I) turnover and accounting; (Count II)

injunctive relief; (Count III) disallowance of claims; (Count IV) equitable subordination; (Count

VII) tortious interference; (Count VIII) recharacterization of loan as equity; (Count X) breach of

fiduciary duty; (Count XI) aiding and abetting breach of fiduciary duty; (Count XII) determination

of secured status; (Count XIII) right of setoff; (Count XIV) equitable disallowance; (Count XV);

objection to claim; (Count XVI) exemplary damages; (Count XVII) misappropriation of trade

secrets under federal law; (Count XVIII) misappropriation of trade secrets under state law; and

(Count XIX) lender liability.[4]

Plaintiffs' claims should all be dismissed for numerous reasons.  Among other reasons,

Plaintiffs assert claims that: (1) are not cognizable causes of action, (2) Plaintiffs are barred from

relitigating, (3) Plaintiffs have waived and released, and (4) fail to plead essential elements.  In

addition, the Complaint should be dismissed because it does not meet the heightened pleading

standards of Rule 9, and Plaintiffs' "shotgun pleading" is impermissible under Rule 8.

### II.    **Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility

---

[4] For the claims against it, SLS is often lumped into a larger group—including "Defendants" or "Scheme
Defendants" (which includes all Defendants (Compl., p., 2, n.2))—and so the exact bases of the claims
against SLS are unclear.  In addition, Counts V, VI, and IX are not directed at SLS but may nevertheless
implicate SLS in one fashion or another (again, unclear based upon the nature of the Complaint).
Accordingly, SLS reserves the right to address any allegations Plaintiffs attempt to clarify or amplify in
their response to SLS' Motion and which may not be addressed already herein.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780,

786 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted)).

Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*,

556 U.S. at 678. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (plaintiffs must plead facts "to raise a right to relief above the speculative level").

When assessing a motion to dismiss under Rule 12(b)(6), "[f]irst, the factual and legal elements of

a claim should be separated," and, second, the "[c]ourt must then determine whether the facts

alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). "[A]

complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show'

such an entitlement with its facts." *Id.* at 211 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d

224, 234-35 (3d Cir. 2008)).

Collateral estoppel and the first-filed rule may be raised under Rule 12(b)(6) and, to that

end, the court may consider matters of public record, including court orders. *Tyler v. O'Neill*, 52

F. Supp. 2d 471, 473-74 (E.D. Pa. 1999) ("Among the vehicles often used to challenge the

sufficiency of a pleading is the filing of a motion to dismiss for failure to state a claim upon which

relief can be granted under Fed. R. Civ. P. 12(b)(6) and *res judicata*, although an affirmative

defense, may be raised in a Rule 12(b)(6 ) motion." Of course, in resolving a Rule 12(b)(6) motion,

the court primarily considers the allegations in the complaint, although matters of public record,

orders, items appearing in the record of the case and exhibits attached to the complaint may also

be taken into account.") (citing *Rycoline Products, Inc. v. C & W Unlimited* , 109 F.3d 883, 886

(3rd Cir. 1997 ); *Mack v. Municipality of Penn Hills* , 547 F. Supp. 863, 868 n.9 (W.D. Pa.1982);

*Chester Cnty. Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990)).

The Court may also consider the Severance Agreement in deciding a Rule 12(b)(6) motion.

*See, e.g., Pfizer Inc. v. Elan Pharmaceutical Research Corp.,* 812 F. Supp. 1352, 1357 (D. Del.

1993) ("When deciding a Rule 12 (b)(6) motion, the Court may consider the terms of an agreement

referenced in the complaint) (citing (*Brill v. Burlington Northern, Inc.,* 590 F. Supp. 893, 895 n. 2

(D.Del.1984) (holding that court properly considered "those documents which were referred to in

the plaintiff's amended complaint"), (5 Charles A. Wright & Arthur R. Miller, *Federal Practice*

*and Procedure* § 1327, at 762–63 (1990)), (*Bechtel Corp. v. Local 215, Laborers' Int'l Union of*

*N. Am.,* 405 F. Supp. 370, 374 n. 1 (M.D.Pa. 1975) (in considering an agreement referred to in the

complaint on a Rule 12(b)(6) motion, the Court observed that the "better practice would have been

for plaintiffs to set forth the entire contract or to attach that document to the complaint in the first

place"), *aff'd in relevant part,* 544 F.2d 1207 (3d Cir.1976).

## III.    Dismissal Under Rule 12(b)(6) Is Warranted.

### A.    Counts II, XIV, XVI, and XIX are not causes of action.

For the reasons set forth more fully in the SeeCubic Memo, Count II (Injunctive Relief),

Count XVI (Exemplary Damages), and XIX (Lender Liability) should be dismissed because they

are not recognized as standalone causes of action under state or federal law, and Count XIV

(Equitable Disallowance) is not a cause of action under the Bankruptcy Code.  SLS hereby joins

in and adopts by reference said bases for dismissal of Counts II, XIV, XVI, and XIX set forth in

SeeCubic's Memo as though fully restated herein.

### B.    Plaintiffs are barred from relitigating their claims.

For the reasons set forth more fully in the SeeCubic Memo, Plaintiffs' claims related to the

origination and enforcement of the Omnibus Agreement are barred by (1) collateral estoppel, and

(2) the First-Filed Rule[5].  For the reasons set forth immediately below, both bases for dismissal apply with equal force to SLS, and SLS hereby joins in and adopts by reference said bases for dismissal set forth in SeeCubic's Memo as though fully restated herein.

For collateral estoppel, SeeCubic principally relies upon *Hawk Inv. Holdings Ltd. v. Stream TV Networks, Inc.*, No. 2022-0930-JTL, 2022 WL 17258460, at *4-5 (Del. Ch. Nov. 29, 2022) (the "Collateral Estoppel Opinion"); *Stream TV Networks, Inc. v. SeeCubic, Inc.*, No. 2020-07*66-JTL (Del. Ch. 2020) (the "Omnibus Agreement Action"); *Chancery PI Opinion*, 250 A.3d 1016 (Del. Ch. Dec. 8, 2020); and *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323 (Del. 2022) (the "Delaware Supreme Court Opinion").

Those cases include undisturbed findings in favor of SLS that bar Plaintiffs' claims here. For example, in the Omnibus Agreement Action, the Chancery Court found that, among other things, (1) SLS loaned Stream $6,000,000, evidenced by the SLS Notes, (2) Stream pledged its assets and the assets of its wholly owned subsidiaries as security for the SLS Notes, (3) Stream executed a security agreement in connection with the SLS Notes, which authorized SLS to take control of Stream's assets if Stream defaulted under the SLS Notes, (4) the Hawk Conversion Agreement was amended in April 2019, which caused the SLS Conversion Agreement to terminate, (5) neither the Hawk Notes nor the SLS Notes ever converted into equity, and the notes remain outstanding, and (6) Stream defaulted on the SLS Notes and Hawk Notes in February 2020. *Chancery PI Opinion*, 250 A.3d at 1023.

On appeal, Stream did not challenge any of the Court of Chancery's factual findings and the Delaware Supreme Court adopted those findings.  *Delaware Supreme Court Opinion*, 279 A.3d at 326-29.  Similar findings were also made in the Collateral Estoppel Opinion.  *See Hawk*, 2022

---

[5] SeeCubic correctly argues that the Injunction Bond Rule bars Plaintiffs' Complaint here.  Because SLS is not party to the Omnibus Agreement Action, it does not itself invoke the Injunction Bond Rule.

WL 17258460 at *2 (explaining that Stream pledged all of its assets for the SLS Notes and that

the SLS Conversion Agreement terminated after the Hawk Conversion Agreement was amended

in April 2019).  Based upon the foregoing, and for the reasons set forth in the SeeCubic Memo,

Plaintiffs are barred by collateral estoppel from relitigating their claims related to, and without

limitation, the origination and enforcement of the Omnibus Agreement and the conversion of the

SLS Notes to equity.

For the First-File rule, SeeCubic correctly explains that Stream's operative complaint in

the Delaware Federal Action involves all of the main characters as the Complaint here, even if

some here are not defendants there or vice-versa, and both cases involve the same theories.

Specifically as to SLS, Plaintiffs implicate SLS in the same manner in both cases; namely, and

among other things, Stastney is the Managing Member of SLS, SLS is Stream's senior secured

lender, SLS entered into a conversion agreement, SLS (through Stastney) purportedly would not

honor the conversion agreement, and there was a purported conspiracy to enable SLS and Hawk

to seize Stream's assets.  *See* Delaware federal action *Stream TV Networks, Inc. v. Stastney*, No.

22-cv-00851-CJB (D. Del. June 22, 2022), ECF No. 54, ¶¶ 14, 51, 57-8, 61.  This is the exact same

narrative Plaintiffs tell here and now.  *See e.g.,* Compl., ¶¶ 1, 20, 26, 47.

SeeCubic also correctly explains that Stream uses the same conspiracy theory arguments

here as in the Delaware Federal Action.  They attack the Secured Parties' proofs of claims, and

they re-assert the Delaware Federal Action theories of recovery of conspiracy, conversion, breach

of fiduciary duty, and tortious interference based upon nearly identical facts.  The Delaware

Federal Action encompasses at least the following claims here: Count III (equitable disallowance);

Count IV (equitable subordination); Count VII (tortious interference); Count VIII

(recharacterization of debt as equity); Count X (breach of fiduciary duty); Count XI (aiding and

abetting breach of fiduciary duty); Count XII (determination of secured status); Count XIII

(setoff); Count XIV (equitable disallowance); and Count XIX (lender liability).

Accordingly, for the reasons set forth above and more fully in the SeeCubic Memo, the

Complaint should be dismissed under the First-File Rule.

### C.      Plaintiffs waived their claims against SLS and Stastney.

A substantial portion of the Complaint centers around Stastney's alleged conduct while he

was Stream's CFO and Vice Chairman of Stream's Board.  *See e.g.*, Compl., ¶¶ 55-62, 159-161,

164-66, 188-89, 194-98, 204-05, 221-22.  This is a problem for the Plaintiffs.

Stream and its "subsidiaries" specifically released and waived all claims against Stastney

*and* SLS "related in any way to payments and service of Stastney." *See* Ex. A (Severance

Agreement); *see also*, Compl., ¶ 18 (alleging that Technovative is a wholly owned subsidiary of

Stream).  Plaintiffs refer to various terms of the Severance Agreement in their Complaint—such

as Stream's agreement to pay Stastney certain monies and the extension of the SLS Notes' maturity

date—but they cast these allegations as some nefarious conduct by Stastney.  In reality, those terms

are part of the Severance Agreement executed by Stream and in which Stream and its subsidiaries

waived their claims against both SLS and Stastney.  *See* Ex. A, p. 2.  Those waivers and releases

should be enforced and require dismissal of any claim against SLS based upon Stastney's alleged

conduct or any purported malfeasance.  *See In re Avandia Marketing, Sales Practices and Prods.*

*Liability Litig.*, 12-cv-4085, 2013 WL 4828225, at *2-3 (E.D. Pa. Sept. 9, 2013) (dismissing claim

with prejudice as barred by release executed by plaintiff in favor of defendant; "under Delaware

law, an unambiguous signed release is binding on the parties unless executed and procured by

fraud, duress, accident or mutual mistake.").

Accordingly, dismissal of all claims based upon the alleged conduct of Stastney, whether

individually or on behalf of SLS, should be dismissed with prejudice.

### D.    Plaintiffs otherwise fail to state a claim against SLS.

In addition to the bases for dismissal set forth above, Plaintiffs' claims must be dismissed for the following reasons.

### 1.    Turnover and Accounting (Count I)

For the reasons stated more fully in the SeeCubic Memo, Plaintiffs fail to state a claim for turnover and accounting. SLS hereby joins in and adopts by reference said bases for dismissal set forth in the SeeCubic Memo as though fully restated herein.  In addition, SLS states as follows:

Plaintiffs seek turnover of the Stream Bankruptcy Assets (as defined in the Complaint), but Plaintiffs do not allege that SLS is actually in possession of those specific assets.  Plaintiffs just assert that "SLS and Hawk began claiming ownership of and seizing Stream's assets through their new business entity [SeeCubic]" and allege that SeeCubic "declared itself "[o]wner of the brand Ultra-D." (Compl., ¶ 85.)  Count I itself only generically refers to the "Defendants" being in possession of Plaintiffs' alleged assets (*id.*, ¶¶ 130-31), and then asks that SLS, among others, be directed to petition a court in the Netherlands to overturn its June 29, 2023, order in order to restore Mathu Rajan as the director of SCBV and Stream's other Dutch subsidiaries. (*Id.* at ¶¶ 130-34.)  However, on September 20, 2023, the Netherlands Court rejected Mr. Rajan's unilateral appointment of a director of certain Dutch entities, removed that person, and appointed Stastney as provisional director of the companies.  *See* TRO Motion (Adv. Dkt. ECF No. 30), Ex. G, §§ 2.28, 5.18, 5.20.  This decision, issued after Plaintiffs filed their Complaint, undoubtedly inspired Plaintiffs' latest litigation chaos—the Motion for Temporary Restraining Order.  *Id.*

Regardless, it is not clear how Mathu Rajan's status as a director of those companies is an asset under Section 363 subject to turnover under Section 542; nor does Plaintiff allege any basis under Section 542 by which a party can be compelled to petition another jurisdiction (in another country) to undo a ruling.  Ultimately, there is no allegation that SLS, separately and on its own,

-10-

took any such action as to the alleged assets. Having failed to allege that SLS is in possession, custody, or control of estate assets, Count I should be dismissed. *See e.g., In re Irwin*, 509 B.R. 808, 815 (Bankr. E.D. Pa. 2014) (plaintiff must establish, among other things, that a defendant is in possession, custody, or control of assets); *In re Trinity Innovative Enterprises, LLC*, No. 09-20579REF, 2010 WL 5462495, at *6-7 (Bankr. E.D. Pa. Dec. 27, 2010) (dismissing turnover and accounting claims where Trustee did not set forth adequate grounds to state a claim that is plausible on its face); *Burtch v. Ganz*, 405 B.R. 148, 153–54 (E.D. Pa. 2009), *aff'd sub nom. In re Mushroom Transp. Co.*, 388 F. App'x 204, 208-09 (3d Cir. 2010) (affirming the Bankruptcy Court's dismissal of turnover and accounting claim where defendant was never in "possession, custody, or control" of said assets).

### 2.    Injunctive Relief (Count II)

As explained above, injunctive relief is a remedy, not a cause of action, and dismissal is warranted on that basis alone. To the extent further response is required to Count II in light of Plaintiffs' TRO Motion (Adv. Dkt. ECF No. 30), SLS refers to its Response to the TRO Motion (Adv. Dkt. ECF No. 43). As established more fully therein, injunctive relief is not warranted against SLS because, among other reasons, Plaintiffs do not allege any wrongdoing by SLS and do not allege any resultant injury or irreparable harm from such alleged conduct.

### 3.    Disallowance of Claims (Count III)

For the reasons stated more fully in the SeeCubic Memo and the Hawk Memo, Count III should be dismissed as to SLS because Plaintiffs have not successfully prosecuted, and cannot successfully prosecute, one of the predicate claims against SLS under 11 U.S.C. 502(d). SLS hereby joins in and adopts by reference said bases for dismissal set forth in the Hawk Memo as though fully restated herein. In addition, SLS states as follows:

Dismissal of Count III is warranted because Plaintiffs admit that they have not obtained a judicial determination that either Hawk, SLS, or SeeCubic are liable to Plaintiffs.  Plaintiffs assert that the claims filed by Hawk, SLS, and SeeCubic must be disallowed under 11 U.S.C. 502(d) "until such time as [those defendants] turnover Stream's Bankruptcy Assets to Plaintiffs' *[sic]* or otherwise satisfy whatever judgments are entered against them from this adversary proceeding." Compl., ¶ 150.    However, "to disallow a claim under section 502(d) requires a judicial determination that a claimant is liable." *In re Lids Corp.*, 260 B.R. 680, 684 (Bankr. D. Del. 2001) (citing *Creditors of Melon Produce, Inc. v. Braunstein*, 112 F.3d 1232, 1237 (1st Cir. 1997) ("the key phrase in this inquiry is 'the amount . . . for which such entity or transferee is liable.'")). Plaintiffs have not obtained a judicial determination of any of the defendants' liability and so Count III must fail.

### 4.      Equitable Subordination (Count IV)

Count IV should be dismissed because Plaintiffs do not allege facts sufficient to support the claim.  Under Section 510(c)(1), a court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest."  11 U.S.C. § 510(c)(1).  For a claim to be equitably subordinated, a plaintiff must establish that: "(1) the claimant engaged in some type of inequitable conduct; (2) the misconduct resulted in injury to the creditors or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim is consistent with the provisions of the Bankruptcy Code."  *In re Nat'l Med. Imaging, LLC*, 627 B.R. 73, 103 (Bankr. E.D. Pa. 2021) (citing *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 411–12 (3d Cir. 2009)) (other citation omitted).  "The purpose of equitable subordination is 'to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results.'"  *In re Commonwealth*, 540 B.R.

at 191 (*quoting Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233 (3d Cir. 2003)).

Equitable subordination is an extraordinary remedy that is "not invoked against a non-insider creditor unless a claimant can demonstrate that the creditor has engaged in gross or egregious misconduct tantamount to fraud, overreaching or spoilation." *In re M. Paolella & Sons, Inc.*, 161 B.R. 107, 122 (E.D. Pa. 1993). It is a "'remedial rather than penal' doctrine . . . ." *In re Commonwealth Renewable Energy, Inc.*, 540 B.R. 173, 190-92 (Bankr. W.D. Pa. 2015). The claimant seeking equitable subordination must show detrimental reliance relied on the creditor's misconduct. *Id.*

Plaintiffs do not allege facts establishing a right to equitable subordination. Indeed, Plaintiffs fail to explicitly plead reliance on Defendants' alleged misconduct to their detriment. Further, Plaintiffs baldly allege that "Defendants have engaged in inequitable conduct, including, without limitation, a civil conspiracy, breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and breach of contract," and that this was done to "serve their own interests and unjustly enrich themselves." Compl., ¶¶ 153-54. With respect to injury, Plaintiffs' allegations are equally vague: "Defendants' misconduct resulted in injury to Stream's general unsecured creditors, its subsidiaries, its enterprise and going concern value, its current and prospective business relationships, including investors and strategic partners, its shareholders, its employees, and conferred an unfair advantage on Defendants." *Id.* at ¶ 155. Plaintiffs failed to allege that they relied on Defendants supposed misconduct to their detriment. *Id*. at ¶¶ 151–156.

These allegations are mere recitations of the elements of the claim, and they are not sufficient to withstand dismissal. See *Iqbal*, 556 U.S. at 678 ("a formulaic recitation of the elements of a cause of action will not do") (quoting *Twombly*, 550 U.S. at 555); *Perry v. Oxford*

*Law, LLC*, No. 12-3312, 2012 WL 3731802, at *4 (E.D. Pa. Aug. 29, 2012).  Further, Plaintiffs

fail to allege a concrete harm or unfair advantage, as required. Although 11 U.S.C. § 510(c) "does

not require a quantification of the harm suffered by the debtor or creditors . . . there must be an

allegation (and later, proof of) some concrete harm or unfair advantage to support a claim for

equitable subordination." *In re Nat'l Med. Imaging, LLC*, 627 B.R. at 104.  Plaintiffs fail to meet

that burden; they do nothing more than assert sweeping allegations against all defendants of

inequitable conduct and harm with mere conclusory statements. For its part, SLS merely enforced

its rights under the SLS Notes, which cannot constitute inequitable conduct.  *Id.* at 103-04 ("[t]he

exercise of contractual rights is not inequitable, even if the rights are exercised harshly and cause

harm to other creditors. Firms that have negotiated contracts are entitled to enforce them to the

letter, even to the great discomfort of their trading partners, without being mulcted for their lack

of good faith."  (quoting *In re Island View Crossing II, L.P.*, 604 B.R. 181, 202-03 (Bankr. E.D.

Pa. 2019)).

### 5.      Breach of Contract (Count V)

Count V is directed to Defendant Stastney and, accordingly, this Motion is not addressed

to Count V.  However, to the extent Plaintiffs are using Count V as a predicate for any of their

claims against SLS, then SLS joins in and adopts by reference the bases for dismissal of Count V

set forth in the Stastney Memo.

### 6.      Negligence (Count VI)

Count VI is directed to Defendants Stastney, Kabacinski, Gollop, and Gola, and,

accordingly, this Motion is not addressed to Count VI.  However, to the extent Plaintiffs are using

Count VI as a predicate for any of their claims against SLS, then SLS joins in and adopts by

reference the bases for dismissal of Count VI set forth in the Stastney Memo.

### 7.    Tortious Interference (Count VII)

Count VII should be dismissed for the reasons stated more fully in the SeeCubic and Hawk Memoranda; namely, the claim is (1) barred by the statute of limitations, and (2) insufficiently pled. SLS hereby joins in and adopts by reference said bases for dismissal set forth in the SeeCubic and Hawk Memoranda as though fully restated herein. Further, SLS provides the following:

To establish a claim for tortious interference a plaintiff must plead: (1) the existence of an existing or prospective contractual relationship between plaintiffs and a third party; (2) intent on the part of defendants to harm the plaintiffs by interfering with this relationship; (3) absence of privilege or justification for such interference; and (4) actual harm or damage to plaintiffs as a result of defendants' conduct. *Bioquell, Inc. v. Feinstein*, No. 10-2205, 2010 WL 4751709, at *7 (E.D. Pa. Nov. 23, 2010) (citing *U.S. Healthcare v. Blue Cross of Greater Phila.,* 898 F.2d 914, 925 (3d Cir.1990)).

Here, Plaintiffs lump all of the "Defendants" into this claim, and make generic allegations of "Defendants'" knowledge, "aiding and abetting" certain conduct, and "actions to interfere." (Compl., ¶¶ 170-77.) Plaintiffs cannot establish "intent," as required for tortious interference, when they do not allege which defendants, specifically, intended to do anything. *See IQVIA, Inc. v. Breskin*, No. 22-2610, 2023 WL 2588450, at *1, *3 (E.D. Pa. Mar. 20, 2023) (slip copy) ("The tortious interference claim will be dismissed because IQVIA has not pled specific intent to harm with any underlying factual allegations. . . . Count VI, tortious interference, will be dismissed because IQVIA has not adequately pled an intent to harm on the part of Slipstream.").

To the extent Plaintiffs allege any specific intent or improper conduct, such allegations are not directed at SLS. *See., e.g.,* Compl., ¶¶ 71 (addressed to purported ToJoy relationship and only referencing Defendant Kabacinski), 122-24 (addressed to alleged Bosch and Good relationships and only referencing SeeCubic). Further, Plaintiff does not plead that SLS' (unspecified) actions

-15-

were unjustified, a necessary element of a tortious interference claim. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 214 (3d Cir. 2009) (plaintiff bears burden of pleading and establishing lack of justification).

Plaintiff's allegations of tortious interference are unmoored to SLS and, in any event, purely conjectural, which is insufficient to withstand dismissal. *See Twombly*, U.S. 550 at 557 (noting that allegations of the mere possibility of misconduct are not enough).

### 8.    Recharacterization of Loan as Equity (Count VIII)

As set forth above, Count VII is barred by: (1) collateral estoppel because the Court of Chancery has held that the SLS Conversion Agreement—which is the entire basis of Count VIII—was terminated in April 2019 upon amendment to the Hawk Conversion Agreement, (2) the First-File Rule because the Delaware Federal Action encompasses Count VIII, and (3) the Severance Agreement, in which Stream acknowledged the SLS Notes (after the termination of the SLS Conversion Agreement no less).

### 9.    Fraudulent Conveyance (Count IX)

Count IX is directed to Defendants Stastney, Kabacinski, Gollop, and Gola, and, accordingly, this Motion is not addressed to Count IX.  However, to the extent Plaintiffs are using Count IX as a predicate for any of their claims against SLS, then SLS joins in and adopts by reference the bases for dismissal of Count IX set forth in the Stastney Memo.

### 10.    Breach of Fiduciary Duty (Count X)

Count X should be dismissed for the reasons stated more fully in the Memoranda of Hawk and Stastney; namely, Plaintiffs fail to (a) establish a fiduciary duty on the part of the Secured Creditors, and (b) sufficiently plead the necessary elements of their claim.  SLS hereby joins in and adopts by reference said bases for dismissal set forth in Hawk's and Stastney's Memoranda as though fully restated herein.  Those arguments carry even greater weight for SLS given that

-16-

Plaintiffs' allegations of breach are not directed at SLS, save one conclusory allegation.  *See* Compl., ¶ 200. Further, SLS provides the following:

SLS is Stream's senior secured lender, and a debtor-creditor relationship does not confer a fiduciary relationship between the parties, absent certain circumstances.  *Perlberger Law Assocs., P.C. v. Wells Fargo Bank, N.A.*, 552 F. Supp. 3d 490, 494 (E.D. Pa. 2021).  "[A] fiduciary relationship may arise 'if the lender gains substantial control over the borrower's business affairs.'"  *Id.* (quoting *Temp-Way Corp. v. Cont'l Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992)). Control over the borrower is demonstrated when there is evidence that the lender was involved in the actual day-to-day management and operations of the borrower or that the lender had the ability to compel the borrower to engage in unusual transactions.  *Blue Line Coal Co., Inc. v. Equibank*, 683 F. Supp. 493, 496 (E.D. Pa. 1988) (citing *Stainton v. Tarantino*, 637 F. Supp. 1051, 1066 (E.D. Pa. 1986)).  "The mere monitoring of the borrower's operations and the proffering of management advice by lenders, without more, does not constitute control." *Temp-Way*, 139 B.R. at 318 (citations omitted).  "Moreover, action taken by the creditor to minimize risk does not constitute total and absolute control." *Id.* (citation omitted).

Here, there is no allegation suggesting that SLS or Hawk were involved in Plaintiffs' day-to-day operations.  Nevertheless, in conclusory fashion, Plaintiffs assert that SLS and Hawk "owed fiduciary duties [to Plaintiffs] by virtue of their status as secured lenders that operated with complete control over the Debtors, including making business decisions and directing the Debtors' business operations."  (Compl., ¶ 199.)  This allegation appears to be a mere afterthought for Plaintiffs, and it is not sufficient to overcome the traditional rule that creditors owe their debtors no fiduciary duties.

To the extent Plaintiffs' Complaint alleges a breach of fiduciary duty by Stastney after he resigned from Stream—and to the extent such alleged conduct by Stastney is being imputed to SLS—the claim fails because a former director owes no fiduciary duty. *See In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 758 (Del. Ch. 2005) ("Just as Delaware law does not require directors-to-be to comply with their fiduciary duties, former directors owe no fiduciary duties . . . ."); *Brown Brown, Inc . v. Cola,745 F.Supp.2d 588 (E.D. Pa. 2003)*, 745 F.Supp.2d at 620, n.12 ("Plaintiffs' allegations about Cola and Tola after they left Plaintiffs' employment are irrelevant to the fiduciary duty/duty of loyalty claims since they no longer owed any such duties once that employment ended."). Because Stastney owed no fiduciary duties once resigned, he could not have breached any fiduciary duty. *Id.* (former director could have breach a duty he no longer had following his termination).

Lastly, Plaintiffs appear to rely on actions taken by Stastney, in his capacity as board member, to attempt to assert a breach of fiduciary duty claim against SLS, yet Plaintiffs offer no allegations to support that Stastney's actions as board member can be imputed to SLS. As a result, Plaintiffs have not, and cannot, state the elements necessary to establish that SLS, a secured creditor, owed a fiduciary duty to Stream, and the claim should be dismissed with prejudice.

### 11.    Aiding and Abetting Breach of Fiduciary Duty (Count XI)

Count XI should be dismissed because Plaintiffs are barred by the applicable statute of limitations and Plaintiffs fail to sufficiently plead the necessary elements for this claim, as set forth more fully in the Memoranda filed by SeeCubic, Hawk, and Stastney. SLS hereby joins in and adopts by reference said bases for dismissal set forth in those Motions as though fully restated herein. Further, SLS provides the following:

To establish the claim for aiding and abetting breach of fiduciary duty, a plaintiff must show: (1) a breach of fiduciary duty owed to another; (2) knowledge of the breach by the aider or

abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that

breach. *Adena, Inc. v. Cohn*, 162 F. Supp. 2d 351, 357–58 (E.D. Pa. 2001) (citation omitted).

Here, Plaintiffs allege that several defendants aided and abetted a breach of fiduciary duty

by "signing the illegitimate Omnibus Agreement, insisting that Stastney be named CFO of Stream,

intimidating and threatening McCarthy, suggesting Stream expand its Board of Directors as part

of Stastney's scheme, restricting access to the Company's servers, and seizing Stream's assets."

(Compl., ¶ 205.) This long-winded allegation is vague, at best, and employs "catch-all" pleading

that is not sufficient. *See In re Jamuna Real Estate, LLC*, 416 B.R. 412, 437 (Bankr. E.D. Pa. 2009)

("From this 'catch-all' style of pleading, neither of the [defendants] can determine who is charged

with the breaching of fiduciary duties and who is guilty of aiding and abetting such breaches.").

Moreover, Plaintiffs assert in Count X that SLS breached its fiduciary duty to Plaintiffs. "This

matters because, by definition, a defendant cannot both 'breach' and 'aid/abet' a breach in the

same instance." *In re Jamuna*, 416 B.R. at 437.  *See also Am. Inst. for Chartered Prop. Cas.*

*Underwriters v. Posner*, No. 19-5369, 2020 WL 12968360, at *1 n.3 (E.D. Pa. Apr. 27, 2020) (slip

copy); *Advanced Fluid Sys., Inc. v. Huber*, No. 1:13-CV-3087, 2017 WL 2445303, at *19 (M.D.

Pa. June 6, 2017); *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 678 (E.D. Pa. 2014).

This claim must further be dismissed to the extent the alleged conduct of Stastney occurred

after his resignation from the Board of Stream.  As demonstrated above, Stastney had no fiduciary

duty to Stream following his resignation.  *See supra*, Section III.D.10.  As such, Stastney had no

duty to breach and SLS could have not aided and abetted the breach of a non-existent duty.

### 12.   Determination of Secured Status (Count XII)

In addition to the bases for dismissal set forth above, Count XII should be dismissed

because Plaintiffs offer no basis for Count XII.  SLS is Stream's senior secured creditor. On May

23, 2023, SLS filed Claim No. 2 in Bankr. E.D. Pa. Case No. 23-10764, and Claim No. 9 in Bankr.

E.D. Pa. Case No. 23-10763 ("SLS Claims"). Despite their efforts to disallow the SLS Claims elsewhere, Plaintiffs allege under Count XII that they "require a determination of the secured claims of Hawk, SCI [SeeCubic], and SLS if any, so that it may formulate a plan of reorganization and determine if bifurcation of Defendants' claims is required." (Compl., ¶ 214.)

A timely filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount of the claim. *See* 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3001(f). Section 506(a) provides "that a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral." *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 961 (1997) (citation omitted). Plaintiffs bear the initial burden of proving, with sufficient evidence, that the SLS Claims are undersecured. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 140 (3d Cir. 2012).

Plaintiffs assert "that many of the attachments by Hawk, SCI, and SLS . . . were ineffectual, and that many of the attachments did not reach Stream's accounts receivable." (Compl., ¶ 213.) Plaintiffs offer no indication what "attachments" were supposedly "ineffectual," what bearing "Stream's accounts receivable" has on the claims, or what the value is of the subject collateral. This is not sufficient to withstand dismissal.

### 13.    Right of Setoff (Count XIII)

Count XIII should be dismissed because 11 U.S.C. § 558 is not available to Plaintiffs, and because Plaintiffs offer no basis as to the purported setoff.

First, 11 U.S.C § 558 provides for *defenses* to the estate—not causes of action. Plaintiffs may not wield section 558 defenses as independent causes of action against the defendants. *See In re Suarez*, 625 B.R. 508, 515-16 (Bankr. D.N.M. 2020). *See also In re Beach*, 447 B.R. 313, 323 (Bankr. D. Idaho 2011). Count XIII should be dismissed on this basis alone.

Second, Plaintiffs' entire claim to a purported setoff—in the amount of $8,342,059—is for "legal fees and services." (Compl., ¶ 217.) Yet, Plaintiffs cite no contractual or other basis for their recovery of attorneys' fees and costs from any of the defendants; Plaintiffs do not automatically get a setoff for the legal fees they have incurred through their "litigation chaos." Further, Plaintiffs want the setoff against the debts owed to Hawk, SLS, and SeeCubic, but claim that "Defendants," generally, are indebted for Plaintiffs' $8.3 million legal bill; *i.e.*, Plaintiffs do not even attempt to allege what defendants owe what money to which of the Plaintiffs or which of the debts—whether to Hawk, SLS, or otherwise—should be offset. This runs afoul of the requirement that the debts at issue be mutual. *See In re Red Rock Servs. Co., LLC*, 480 B.R. 576, 615 (Bankr. E.D. Pa. 2012) ("[t]o be mutual, the debts must be in the same right and between the same parties, standing in the same capacity" and the "term 'capacity' in the setoff context means that each party must owe the other something in his or her own name, and not as a fiduciary.") (internal citations and quotations omitted). Further still, Plaintiffs do not identify what of the alleged $8,342,059 in purported legal fees and costs was incurred pre- or post-petition, and that would bear directly on any claim to a right of setoff. *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262 (3d Cir. 2000) (party asserting setoff must show that "[a] debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case").

### 14. Equitable Disallowance (Count XIV)

Count XIV should be dismissed because Section 510(c) of the Bankruptcy Code does not afford Plaintiffs the relief they seek. Section 510(c) of the Bankruptcy Code deals solely with equitable subordination—not equitable disallowance. 11 U.S.C. § 510(c). Equitable subordination and disallowance are mutually exclusive concepts. "Equitable disallowance" is a means by which the court invalidates a claim through equitable means. *See In re Congoleum Corp.*, Bankr. No. 03-

51524(KCF), 2007 WL 4571086, at *11 (Bankr. D.N.J. Dec. 28, 2007). In contrast, "equitable subordination" allows the court to alter the order of payment of an *allowed* claim. As such, a creditor whose claim has been equitably subordinated still remains a creditor under the Code. *See, e.g.*, *Goldstein v. Wolfson*, 132 F.2d 624 (2nd Cir. 1953).

The plain terms of section 510(c) do not provide Plaintiffs with the relief they seek. Similarly, section 502(b) does not provide an equitable basis to disallow an allowable claim. *See* § 502(b)(1)–(9). Equitable considerations can justify only the subordination of claims, not their disallowance. *Matter of Mobile Steel Co.*, 563 F.2d 692, 699 (5th Cir. 1977)[6]. *See also In re Hercules Offshore, Inc.*, 565 B.R. 732, 760 (Bankr. D. Del. 2016) ("The exceptions to the allowance of a claim are specifically enumerated in Bankruptcy Code section 502(b), and a creditor's conduct—whether or not it was in good faith—is not within this list of exceptions. . . . [B]ankruptcy courts routinely reject equitable disallowance as a remedy under the Code."). *See also In re LightSquared Inc.*, 504 B.R. 321, 339-40 (Bankr. S.D.N.Y. 2013).

Equitable disallowance of an allowable claim is not allowed under sections 510(c) and 502(b) the Bankruptcy Code. If there is no basis to disallow a claim under section 502, then that claim must be allowed. *See Travelers Cas. & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 449 (2007) (holding that the bankruptcy court must allow a claim "except to the extent that the claim implicates any of the nine exceptions enumerated in § 502(b)") (citing 11 U.S.C. § 502(b)) (internal quotation marks omitted). Because equitable disallowance is not one of the enumerated exceptions to allowance of a claim, the Court must dismiss Plaintiffs' Count XIV.

---

[6] The Third Circuit does not appear to have ruled on whether equitable "disallowance" remains an available remedy. *Citicorp Venture Cap. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 991 n.7 (3d Cir. 1998).

### 15.    Objection to Claims (Count XV)

Count XV should be dismissed because SLS's Claim Nos. 2 and 9 are not duplicative, as Plaintiffs contend.  On March 27, 2023, the Court set May 24, 2023 as the general bar date for proofs of claims. [Case No. 23-10763, ECF No. 42]. On May 23, 2023, SLS timely filed Claim No. 2 of $17,222,484.06 in Technovative's bankruptcy case [Bankr. E.D. Pa. Case No. 23-10764] and Claim No. 9 of $17,222,484.06 in Stream's bankruptcy case (collectively, the "SLS Claims"). [Bankr. E.D. Pa. Case No. 23-10763]. Stream scheduled its secured debt to SLS on Schedule D as "disputed" in the amount of $6,807,781.00. [Case No. 23-10763, ECF No. 53 at 5]. Technovative did not list any secured creditors on its Schedule D. [Case No. 23-10764, ECF No. 48 at 4].

Because Stream scheduled its secured debt to SLS as "disputed" and Technovative failed to list any secured debt on Schedule D, SLS needed to file the SLS Claims. *See* 11 U.S.C. § 1111(a). Otherwise, SLS would have been left with the amount of the claim on Stream's Schedule D—a difference of nearly $10.5 million. Moreover, Hawk, as Collateral Agent for SLS, also filed a claim reflecting the amounts due on the SLS Notes. As stated in the SLS Claims, SLS is not seeking amounts in addition to Hawk. (*See* Claim No. 9-1 at 4, ¶ 3.) SLS filed the SLS Claims to preserve its rights.  As such, they are not duplicative and Count XV should be dismissed.

### 16.    Exemplary Damages (Count XVI)

As set forth above, exemplary damages is a remedy, not a claim, and Count XVI should be dismissed on that basis alone.

### 17.    Misappropriation of Trade Secrets under Federal Law and State Law (Counts XVII and XVIII)

For the reasons stated more fully in the SeeCubic and Hawk Memoranda, Plaintiffs' claim for misappropriation of trade secrets fails because 18 U.S.C. § 1832 does not provide a private right of action, and Plaintiffs fail to sufficiently plead the necessary elements of their claim under

applicable federal and state law. Specifically as to SLS, and without limitation to the other bases for dismissal explained by Hawk and SeeCubic, the Complaint fails to allege that SLS obtained any of Stream's assets, let alone any trade secrets, Stream's assets having been transferred to SeeCubic pursuant to the Omnibus Agreement. *See* Compl., ¶ 75. SLS hereby joins in and adopts by reference said bases for dismissal set forth in the Memoranda of SeeCubic and Hawk as though fully restated herein.

### 18. Lender Liability (Count XIX)

Count XIX should be dismissed because its basis appears to be the same as that set forth in Count X (breach of fiduciary duty). Because Plaintiffs cannot state a claim for breach of fiduciary duty (*see supra*), they likewise cannot to state a claim for "lender liability."

## IV. The Complaint Should Be Dismissed Under Rule 9(b).

Plaintiffs' Complaint revolves entirely around alleged fraud. Indeed, the Complaint commences: "This case arises from Defendants' scheme to defraud the shareholders and creditors of [Stream]." (Compl., ¶ 1.) The allegations underpinning each one of Plaintiffs' nineteen claims are based on the defendants supposedly orchestrating a "scheme" or "conspiracy" to steal Stream's assets. As such, Plaintiff must meet the heightened pleading standards under Rule 9(b) for each of their claims. *Harrison v. Ocwen Loan Servicing, LLC*, No. 1:18-cv-1244, 2018 WL 4635969, at *2 (M.D. Pa. Sept. 27, 2018). "[W]hen a complaint sounds in fraud, 'a party must state with particularity the circumstances constituting fraud . . . .'" *Id.* (quoting Fed. R. Civ. P. 9(b)). *See also Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) ("fraud must be pled with particularity in *all* claims based on fraud") (emphasis in original), *abrogation on other grounds recognized by Humana, Inc. v. Indivior, Inc.*, Nos. 21-2573 & 21-2574, 2022 WL 17718342 (3d Cir. Dec. 15, 2022); *California Pub. Emp. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160-61 (3d Cir. 2004) (holding that Rule 9(b)'s heightened pleading standard applies to claims that sound in fraud).

To satisfy Rule 9(b), made applicable by Fed. R. Bankr. P. 7009, a plaintiff must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *abrogation on other grounds recognized by Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229 (3d Cir. 2020). Plaintiffs must meet this requirement by pleading the "'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum*, 361 F.3d 217 at 224; *Seville*, 742 F.2d at 791. Where, as here, a purported conspiracy is alleged to have been achieved by fraud, Rule 9(b)'s heightened pleading standard applies. *Lum*, 361 F.3d 217 at 228; *Chubb Corp.*, 394 F.3d at 160-61.

At a bare minimum, a plaintiff must support allegations of fraud "with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *In re Rockefeller Center Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002), *overruled on other grounds by Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Even under the most relaxed editorial standards at the least reputable newspaper, Plaintiffs' Complaint would not get published.

To begin, Plaintiffs define all of the defendants as both the "Defendants" and the "Scheme Defendants," and this includes, among others, John and Jane Does and their unnamed law firms and investment banks. (Compl., p. 2, preamble and n.2.) Plaintiffs then proceed to lodge allegations generically against the "Scheme Defendants" and "Defendants" well over one hundred (100) times. (*See generally* Compl.) Then, Plaintiffs allege a combined nine claims against the "Scheme Defendants" and "All Defendants" (which, by definition, are the "Scheme Defendants"),

including Counts I, II, VII, XI, XIV, XVI, XVII, XVIII, and XIX.  The remaining Counts which implicate SLS, among others—Counts III, IV, VIII, X, XII, XIII, XV—cannot stand if the claims underlying them cannot stand.

A review of just one of these claims demonstrates why the Complaint fails under Rule 9(b). For Count VII, Plaintiffs assert tortious interference against "all Defendants," alleging that "Defendants had knowledge of" Plaintiffs' various business relationships, "Defendants intentionally interfered" with Plaintiffs' alleged business dealings and "conspire[d] to steal and divert Stream's assets," and "Defendants' actions … were intentional, purposeful, and without any justification." (Compl., ¶¶ 170-77.)  Which "Defendants" are Plaintiffs referring to?  Is it SLS, or is it any of the other fourteen (14) defendants, such as John and Jane Doe and their unnamed law firms and investment bankers?   Similarly, when and how specifically did each of specific "Defendants" acquire such knowledge, intentionally interfere, or conspire against Stream?

"[W]here multiple defendants are involved, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Tredennick v. Bone*, 323 F. App'x. 103, 105 (3d Cir. 2008) (citation omitted).  And where, as here, a complaint simply lumps all of the defendants together without specifying the alleged fraudulent conduct for each defendant, a complaint must be dismissed under Rule 9(b).  *See e.g.*, *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J 2011) (fraud claim dismissed where "[p]laintiff lumps all three defendants together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions"); *Mayor and Council of Borough of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1060 (fraud claim dismissed where plaintiff "grouped all the defendants together . . . without specifying the precise misconduct associated with each defendant"); *Moravian Dev. Corp. v. Dow Chem. Co.*, 651 F. Supp. 144, 148 (E.D. Pa. 1986)

-26-

("Such allegations must delineate among the defendants as to their participation or responsibilities in making the statements which are the subject to the suit. Conspiracies described in sweeping or general terms cannot serve as the basis for a cause of action and may be dismissed.") (internal citations and quotations omitted)).

The Complaint plainly fails under Rule 9(b)—it lumps all the defendants together repeatedly and fundamentally fails to provide notice to SLS as to the "who, what, when, where and how" of the claims being asserted against it. The Complaint should be dismissed

## V.  The Complaint Should Be Dismissed Under Rule 8(a).

Rule 8(a)(2), made applicable to this proceeding by Bankruptcy Rule 7008, requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) supplements Rule 8(a)(2)'s short and plain statement requirement and provides that "[e]ach allegation must be simple, concise, and direct." 5 Wright & Miller *Federal Practice and Procedure, Civ. 3d* § 1217 (2023). Read together, "Rules 8(a) and 8(d)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Id.* "Unduly lengthy and/or rambling pleadings fail to satisfy the requirements of Rule 8." *Keyter v. Air India Officers*, No. 10-802-SLR, 2010 WL 4226508, at *2 (D. Del. Oct. 19, 2010) (citing *McNeil v. U.S.*, 508 U.S. 106, 113 (1993)); *see also In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996) ("The second amended complaint is unnecessarily complicated and verbose.").

Put simply, Rule 8(a)(2) mandates that the Complaint not only contain a short and plain statement, but also include a "'showing that the pleader is entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "[I]f a lengthy complaint is drafted in a manner that makes it impossible to 'separate the wheat from the chaff,' it may generally be dismissed for a Rule 8 violation." *Mobley v. Wetzel*, No. 1:14-CV-0035, 2015 WL1511896, at *3 (M.D. Pa. Mar. 31, 2015) (quoting *Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007)).

The Third Circuit has specifically "established a policy against 'shotgun pleadings.'" *Fuhrman v. Mawyer*, 2023 WL 5672314, *4 (M.D. Pa. Sept. 1 2023). "Shotgun pleadings" include any of the following: "(1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* (internal quotations omitted).

Plaintiffs' Complaint is a "shotgun pleading" in every sense and it falls well short of the spirit of Rule 8(a), and thereby deprives SLS and the other defendants of "adequate notice" of Plaintiffs' "claims and the grounds upon which they rest." *Id.* at *14.

First, each of Plaintiffs' claims realleges and reincorporates all prior allegations, rendering it impossible for SLS to ascertain what Plaintiffs are relying on for any given claim against the "Scheme Defendants" (if that even includes SLS for any particular claim). This is not permissible under Rule 8. *See id.* (complaint was a "shotgun pleading" where "each count indiscriminately incorporates all previous counts without regard for the particular defendant or asserted claim," the result being "a logarithmic expansion of paragraphs where each count incorporates previous incorporations that themselves incorporated incorporations." (internal quotations omitted). This, no doubt, "unfairly burdens" the defendants here and Plaintiffs' "obfuscat[ion] of their claims "def[ies] the mandate of Rule 8, denying Defendants the fullest extent of notice to which they are entitled." *Id.* at *14-5.

-28-

Next, plaintiffs have named fifteen (15) defendants and assert nineteen (19) claims for relief. Plaintiffs define the fifteen (15) defendants collectively as the "Scheme Defendants," and that includes, among others, unnamed John and Jane Does, unnamed "Delaware and other law firms representing the John and Jane Does, and unnamed investment banks employed by the Debtors, or John Does, or Jane Does. (Compl. at 2 and n.2). Counts I, II, VII, XI, XIV, XVI, XVII–XVIII assert generalized claims against the "Scheme Defendants," without defining who did what and when, leaving SLS and the Court to wonder what, exactly, SLS is being accused of. "'This type of group pleading in which all the Defendants are lumped together does not provide [the defendants] notice of the claims against [them] and the grounds upon which those claims rest.'" *Abreu v. SCI Greene State Corr. Inst.*, No. 5:23-cv-01092, 2023 WL 2772136, at \*5 (E.D. Pa. Apr. 4, 2023) (quoting *Mazure v. Remington Arms Co.*, No. 2:22-cv-02854 (WJM), 2022 WL 2439196, at \*3 (D.N.J. July 5, 2022)). *See also Cupp v. Cty. of Lycoming*, No. 3:20-cv-001784, 2021 WL 4478304, at \*5 (M.D. Pa. Sep. 30, 2021) (complaint was "impermissibly vague" and failed to satisfy Rule 8 where it "lump[ed] sixteen defendants together without setting forth what each particular defendant is alleged to have done…").

For example, in Count II (Injunctive Relief) Plaintiffs seek both a temporary and permanent injunction "prohibiting the Defendants from using, transferring, selling assigning, dissipating . . . or otherwise disposing of Stream's Bankruptcy Assets" (Compl. at ¶ 138.) Plaintiffs then run through eight (8) separate instances to "[e]njoin[ ] SCI, the 'other Defendants', and their employees, agents, or assignees from, *inter alia*, using Ultra-D demonstration, continuing to use Stream's Bankruptcy Assets, intimidating or otherwise tortiously interfering with Stream's business relationships (Compl. at ¶ 138(a)–(h) (internal quotation marks added). SLS is not able to parse out whether or not it is included as an "other Defendant" in this count or which defendant

supposedly did what and when. SLS is unable respond to these allegations together with hundreds of similar allegations. Nor should SLS be required to do so. *See Mobley*, 2015 WL 1511896, at *3 ("A lengthy complaint, however, can generally be dismissed for violating Rule 8 if it is also so rambling, unclear, or complicated so as to defy response," and recommending dismissal where complaint "meanders back and forth across overlapping yet distinct sets of named defendants.")

Similarly, in Count VII (Tortious Interference with Existing and Prospective Economic Advantage), after impermissibly reincorporating the first 166 paragraphs of allegations, Plaintiffs repeat the same infirmities in Count II. Plaintiffs allege "Defendants had knowledge of and were aware of Plaintiffs' relationship with Google . . . . Defendants took purposeful actions that were designed to intentionally[ harm, interfere with, and disrupt the Google relationship[.]" (Compl., ¶ 170.) Again, SLS is not able to determine whether or not it is included as a "Defendant" in this count. The same issue arises with respect to Counts XI, XIV, XVI, XVII–XVIII, as Plaintiffs have baldly alleged various claims against "other Defendants," "Defendants" and/or "Scheme Defendants."

The Complaint is a "logarithmic expansion of paragraphs" with "incorporated incorporations" of allegations (*Fuhrman*, 2023 WL 5672314, at *14), and it impermissibly "lumps" fifteen different defendants together throughout its claims (*Abreu*, 2023 WL 2772136, at *5). The Complaint does not remotely satisfy Rule 8 and it should be dismissed.

## **CONCLUSION**

For the foregoing reasons, SLS respectfully requests that the Court dismiss the Complaint with prejudice as against SLS.

Dated: November 13, 2023

Respectfully submitted,

**ROBINSON & COLE LLP**

*/s/ Davis Lee Wright*

Davis Lee Wright (No. 90926)
Katherine M. Fix (No. 314471)
Ryan M. Messina (No. 329835)
1650 Market Street
Suite 3030
Philadelphia, Pennsylvania 19103
Tel: (215) 398-0600
Fax: (215) 827-5982
Email: dwright@rc.com
       kfix@rc.com
       rmessina@rc.com

*Counsel for Defendant SLS Holdings VI, LLC*