IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>STREAM TV NETWORKS, INC., *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 23-10763 (MDC) |
| STREAM TV NETWORKS, INC. and TECHNOVATIVE MEDIA, INC.,<br><br>        Plaintiffs,<br>v.<br><br>SHADRON L. STASTNEY, SLS HOLDINGS VI, LLC, HAWK INVESTMENT HOLDINGS LIMITED, ARTHUR LEONARD ROBERT "BOB" MORTON, SEECUBIC, INC., ALASTAIR CRAWFORD, KRZYSZTOF KABACINSKI, KEVIN GOLLOP, ASAF GOLA, JOHN DOE(S), JANE DOE(S), DELAWARE and OTHER LAW FIRMS representing and acting in concert with John Doe(s) and/or Jane Doe(s), INVESTMENT BANKS employed by John Doe(s) and/or Jane Doe(s), PATRIC THEUNE, and SEECUBIC B.V.,<br><br>        Defendants. | Adv. Case No. 23-00057 (MDC) |

# **O R D E R**

**AND NOW**, on August 12, 2023, Stream TV Networks, Inc. ("Stream") and Technovative Media, Inc. ("Technovative," and together with Stream, the "Debtors" or the "Plaintiffs") initiated the above-captioned adversary proceeding (the "Adversary Proceeding").[1]

---

[1] Adv. Pro. Docket No. 1.

**AND**, on September 30, 2023, Debtors filed an *Emergency Motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction* [sic] (the "TRO Motion"), seeking an order enjoining certain actions by the Defendants.[2]

**AND**, the Court held evidentiary hearings on the TRO Motion over a four-day period on October 6, 2023; October 16, 2023; October 30, 2023, and November 27, 2023 (the "TRO Hearing").

**AND**, upon conclusion of the November 27, 2023 hearing, the Court directed the parties to confer and advise the Court regarding their mutual availability for dates in December to conclude the TRO Hearing.

**AND**, on December 8, 2023, the parties informed the Court they agreed to postpone continuation of the hearing on the TRO, *inter alia*, until late January or early February to permit settlement negotiations between the parties .

**AND**, on December 14, 2023, the Court held a status hearing (the "TRO Status Hearing"), at which time the Court ruled that, in light of the parties' agreement to  continue the hearing on the TRO  for approximately two months, and based on the evidence presented at the TRO Hearing, to date, the issuance of a Temporary Restraining Order (the "TRO"), limited in scope, was necessary pending the conclusion of a final hearing on the TRO (the "Final Hearing").

**AND**, the Court directed the parties to prepare and submit an agreed form of order consistent with the Court's ruling at the TRO Status Hearing (the "Proposed Order").

**AND**, as of the date of entry of this Order, the parties have been unable to agree upon the terms of a Proposed Order, thus necessitating the Court to prepare an Order consistent with its

---

[2] Adv. Pro. Docket No. 27; Adv. Pro Docket No. 28.

ruling at the TRO Status Hearing.

It is hereby **ORDERED** and **DETERMINED** that:

1. The TRO Motion is **GRANTED** as set forth herein.

2. The factors considered in granting a motion a for a temporary restraining order or preliminary injunction are the same: (1) whether irreparable harm is likely to occur if the injunction is not granted; (2) likelihood of success on the merits; (3) the balance of harms between parties to the litigation if an injunction is issued or if one is not; and (4) the public interest. *See Osorio-Martinez v. Attorney Gen.*, 893 F.3d 153, 178 (3d Cir. 2018). Temporary restraining orders "typically remain in effect for a maximum of 28 days and cannot extend indefinitely. A preliminary injunction, on the other hand, is effective until a decision has been reached on the merits." *See Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 n. 5 (3d Cir. 2019).

3. As stated at the TRO Status Hearing, in light of the continuation to the Final Hearing, and the evidence presented to date at the TRO Hearing, the Court finds that based upon the following, the issuance of a TRO is warranted:

    a. On October 16, 2023, a copy of the SeeCubic, Inc. website was entered into evidence. The website featured not only SeeCubic B.V. office and contact information, but also SeeCubic B.V. employees (Sheeba Rajesh, Dr. Bart Barenburg, Andy James, Bram Riemens, and Patrick Theune), whose pictures and biographies were prominently displayed as being the leadership team of SeeCubic, Inc.[3] Subsequent testimony on October 30, 2023, established that the website included inaccurate information regarding (1) fundraising, stating that over $170 million had been raised solely by SeeCubic, Inc., where such funds had allegedly

---

[3] Debtor's Exhibit 42; October 16, 2023, Hearing Transcript, 197:12 to 201:13; 202:24 to 205:14.

3

been raised by Stream TV; (2) endorsements obtained by Stream TV and not SeeCubic, Inc. from various news organizations including Fox Business, Huffington Post, and AVS Forum; and (3) the development and ownership of theUltra-D technology, which the Debtors allege is owned by Stream's estate, and not SeeCubic, Inc.[4]

      b.      On November 27, 2023, Mr. Christopher Michaels, Chief Financial Officer of Rembrandt 3d Holdings Ltd. ("Rembrandt") testified that he had conducted an investigation into whether Stream's intellectual property assets had been transferred from Stream to SeeCubic, Inc. Mr. Michaels testified that during his investigation, he discovered an application, dated October 18, 2023, filed with the United States Patent and Trademark Office (the "USPTO") and signed by Shadron Stastney, Chief Executive Officer of SeeCubic, Inc., to register "SeeCubic" as a trademark. Hefurther testified that Stream held a trademark for "SeeCube" since 2018.[5]

      c.      Although there was conflicting testimony at the TRO Hearing regarding whether Mr. Stastney and/or SeeCubic, Inc. intended to sublicense or otherwise transfer the rights under technology licenses held by Stream and/or Stream subsidiaries, including licenses from Koninklijke Philips Electronics ("Philips") and/or Rembrandt, as noted by the Court at the TRO Status Hearing, that testimony is sufficient to cause the Court concern that such activity, to the extent contemplated or intended, could involve property of a debtor's estate and needed to be enjoined pending the Final Hearing.

4.      Although the hearing on the TRO is not yet complete, the Court finds that, given the evidence presented to date and pending the Final Hearing, the Debtors have established the existence of the four factors necessary for the issuance of a TRO.

---

[4] October 30, 2023, Hearing Transcript, 219:18 to 226:2; October 30, 2023 Hearing Transcript, 218:14 to 219:13.
[5] November 27, 2023 Hearing Transcript, 52:13 to 57:18; 79:16 to 83:17.

5. With respect to the first factor, a likelihood of success does not require a "more-likely-than-not showing of success of merits, but does require the plaintiff to demonstrate that it can win on the merits, which involves a showing that its chances of establishing each of the elements of the claim are significantly better than negligible." *See Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021). Given that relatively low threshold in the context of whether a temporary restraining order should issue, the evidence presented to date, as outlined above, support a finding that the Debtor's chances of success are significantly better than negligible.

6. Second, the Debtors have shown that there is risk of immediate irreparable injury to Stream's alleged intellectual property in the form of possible permanent loss of Stream's rights in the Philips and Rembrandt licenses, confusion in the marketplace regarding Ultra-D technology, the role of SeeCubic, Inc. in developing the technology, and the registration of the "SeeCubic" trademark in potential violation of Stream's rights with respect to the "Seecube" trademark.

7. Third, weighing the balance of equities, the Court has not, to date, been presented with evidence that the Defendants would be severely prejudiced by the issuance of a TRO pending the Final Hearing.[6] *See Opticians. Ass'n of Am v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (finding that balancing aims "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the [copyright] owner").

8. Finally, with respect to whether the issuance of a TRO in this instance serves the public interest, it is well-established that the sanctity of intellectual property rights warrants the issuance of injunctive relief where necessary to protect such rights. *See, e.g., Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92-93 (3d Cir. 1992).

---

[6] The Court notes that Mr. Stastney testified that the Defendants do not intend to transfer or permit the use of the sublicense at issue, which would negate a claim of severe prejudice.

5

9. Having found that the factors relevant to the issuance of a TRO have been met to date, the Court will enjoin the Defendants as follows:

    a. No Defendant shall, prior to the conclusion of the Final Hearing, take any action to sublicense, transfer, assign, or otherwise dispose of or affect any license or technology held or purported to be held by the Debtors' estates, including but not limited to the Ultra- D technology, and the Philips or Rembrandt licenses.

    b. SeeCubic, Inc. and Mr. Stastney, or any other person or party acting on either or both of their behalves, shall not on any website or in any external or publicly disseminated form of communication:

        i. Identify SeeCubic B.V. employees as SeeCubic, Inc. employees;

        ii. Describe, reference, display or portray the technology, or any improvements thereon, or make any representations with respect to ownership or development of such technology, purported to be owned and/or developed by Stream and/or its subsidiaries;

        iii. Describe or reference capital raised by the Debtors, endorsements garnered by the Debtors, or any other information that inaccurately portrays SeeCubic, Inc. as having developed the Ultra-D technology from its inception.

    c. SeeCubic, Inc. and Mr. Stastney, or any other person or party acting on either or both of their behalves, shall cease all activities with respect to applying for or receipt of a trademark from the USPTO for the "SeeCubic" mark, pending the conclusion of the Final Hearing.

10. The Final Hearing shall be held on February 2, 2024, at 10:30 a.m. (ET) in Bankruptcy Courtroom No. 2, U.S. Bankruptcy Court, 900 Market Street, Philadelphia, PA.

Dated: January 4, 2024

_____
MAGDELINE D. COLEMAN
CHIEF UNITED STATES BANKRUPTCY JUDGE