**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>Stream TV Networks, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10763 (AMC) |
| In re:<br><br>Technovative Media, Inc.,<br><br>Debtor. | Chapter 11<br><br>Bky. No. 23-10764 (AMC)<br><br>(Jointly Administered) |

**VISUAL SEMICONDUCTOR, INC.'S JOINDER TO DEBTOR'S MOTION FOR TEMPORARY RESTRAINING ORDER AND TO REMBRANDT 3D HOLDING LIMITED'S JOINDER THERETO**

Visual Semiconductor, Inc. ("VSI"), creditor, equity holder and party in interest of the Debtor herein, by and through its counsel, Spector Gadon Rosen Vinci P.C., hereby files this joinder to Debtor's motion for temporary restraining order filed on October 1, 2023 ("Debtor's Motion") and Rembrandt 3D Holding Limited's joinder thereto, and seek enforcement and continuance of the temporary restraining order extended by Court Order dated May 10, 2024 against parties using the Debtor's technology in violation of intellectual property and trade secrets. In support of this motion, VSI states as follows:

1. VSI is a party in interest, equity holder of the Debtor, proposed plan sponsor of the Debtor, and financier and distributor of the Debtor's technology. VSI has invested funds in the Debtor since VSI's inception in 2022.

---

[1] The Debtors, together with the last four digits of the Debtors' federal tax identification numbers, are Stream TV Networks, Inc. (4092) and Technovative Media, Inc. (5015). The location of the Debtors' service address is: 2009 Chestnut Street, 3rd Floor, Philadelphia, PA 19103.

VSI TRO 20240511.1d                              1

2. The Debtor sought a temporary restraining order from the Bankruptcy Court because actions of SeeCubic, Inc. ("SCI") were damaging and threatening to cause additional damage to the Debtor's estate and parties in interest. Besides the immediate and ongoing loss of potential investors and customers by the Debtor to an alleged secured creditor and competitor, there was a potential threat to one of the Debtor's critical third-party technology licenses. SCI's business model to sublicense the Debtor's technology to its customers violates the Debtor's irreplaceable license from Koninklijke Philips Electronics ("Philips") which specifically prohibits such sublicensing. Furthermore, SCI had failed to obtain a license from Rembrandt 3D Holding Limited ("Rembrandt") for technology that the Debtor had licensed from Rembrandt. The Rembrandt license is non-transferable.

3. The Bankruptcy Court issued a temporary restraining order on January 4, 2024 (Dkt. No. 119, Adv. Case No. 23-00057 (MDC)) against the Debtor's alleged secured creditors and those acting in concert with them to protect the Debtor, its estate, its creditors, and its shareholders from irreparable harm.

4. In the *TRO*, the Court found, inter alia, "there is risk of immediate irreparable injury to Stream's alleged intellectual property in the form of possible permanent loss of Stream's rights in the Philips and Rembrandt licenses, confusion in the marketplace regarding Ultra-D technology, the role of SeeCubic, Inc. in developing the technology…" (*TRO* ¶ 6).

5. In the *TRO*, defendants SCI, Shadron L. Stastney, SLS Holdings VI, LLC, Hawk Investment Holdings Limited ("Hawk"), Arthur Leonard Robert Morton, Alastair Crawford, Krzysztof Kabacinski, Kevin Gollop, Asaf Gola, Patric Theune, SeeCubic BV ("SCBV"), and law firms and investment bankers representing and acting in concert with them (collectively, the "Enjoined Parties") were enjoined from:

> ***Describ[ing], referenc[ing], display[ing] or portray[ing] the technology, or any improvements thereon***, *or make any representations with respect to ownership or development of such technology, purported to be owned and/or developed by Stream and/or its subsidiaries.* (*TRO* ¶ 9(b)(ii), emphasis added)

6.  On March 7, 2024, VSI representatives met with the chapter 11 Trustee and the Trustee's counsel. Also in attendance was Rafael Zahralddin, bankruptcy counsel to the Debtor and a party in interest with outstanding administrative claims against the Debtor. In attendance on behalf of VSI were its CEO, Mathu Rajan, and Nicole Maneen. In that meeting, the Trustee stated that Mr. Stastney, Chairman of SCI, had recently met with them to conduct a demonstration of the Glasses-Free 3D technology. The Trustee advised VSI that he had told Mr. Stastney that the technology belonged to the Debtor, a fact that Mr. Stastney acknowledged at the time. However, VSI knows of no efforts made by the Trustee to retain the demonstrator unit on behalf of the Debtor's estate, allowing Mr. Stastney and SCI to retain possession of equipment that (i) contains the Debtor's own intellectual property, (ii) contains technology licensed by the Debtor (through its subsidiary) from Philips, and (iii) contains technology allegedly owned by Rembrandt, to which the Enjoined Parties have no license. By failing to retain an asset clearly identified as an asset of the Debtor's estate, the Trustee gave tacit approval to the Enjoined Parties for continued technology demonstrations to any number of third parties. When VSI has asked Trustee's counsel about the aforementioned, it received no reply.

7.  Upon information and belief, Mr. Stastney, SCI, Hawk, and others working in concert with them have committed multiple violations and continue to violate the *TRO* by displaying Glasses-Free 3D technology for the purpose of raising investment capital to fund the proposed settlement between the Debtor and Hawk, among other things. VSI intends to seek discovery from the Enjoined Parties to ascertain the depth of their *TRO* violations.

8. The ongoing violations continue to damage the Debtor's estate and all parties in interest by (i) poaching investors from the Debtor for its own benefit, (ii) poaching customers from the Debtor for its own benefit, (iii) putting the irreplaceable Philips license at risk since the Debtor, not SCI, is the Philips licensee, and (iv) creating additional exposure for damages claims by Rembrandt, who have a new claim against Technovative.

9. VSI has been damaged because it paid certain expenses on behalf of the Debtor, including contract employees working to fulfill the Debtor's existing customer purchase orders. The efforts of these contract employees were blocked by the Enjoined Parties, who failed to return the Debtor's optical bonding equipment (the "Equipment"), and by the Trustee himself for failing to retrieve the Equipment for the benefit of the Debtor despite his commitment to VSI and his obligation to do so. The Debtor's contract employees, funded by VSI, had arranged for delivery of the Equipment to the facility of a strategic partner which would have kicked off a venture to generate downstream revenue. That strategic partner can accelerate the Glasses-Free 3D project upon delivery of the Equipment; however, as plans for Equipment shipment were being finalized, the Trustee requested that VSI provide an unrestricted debtor-in-possession loan to the Debtor in an unrelated transaction. When VSI failed to oblige, the shipment was canceled by the Trustee, who allowed the Equipment to remain under the control of the Enjoined Parties.

10. VSI is unaware of any efforts made by The Trustee, despite repeated requests by VSI to the Trustee for answers, to obtain the return of or secure any assets of the Debtor's estate, whether it be the bonding equipment for use in product manufacturing, technology demonstrators for use in securing strategic partners and investors, components overdue for customer delivery,

or samples requested by potential customers and investors. These assets remain in the possession of the Enjoined Parties, some of whom have been found in contempt of court previously[2].

11. On May 6, 2024, Rembrandt notified counsel for SCI and Hawk that VSI had become aware of a planned May 7, 2024 meeting to be held by their clients in violation of the *TRO*. Counsel for SCI failed to acknowledge Rembrandt's email at all. Hawk's counsel eventually responded, but only two days after the alleged meeting had occurred. Hawk's counsel stated:

> It is up to the Debtors to determine whether they believe a violation occurred or needs to be addressed. The Debtors have not taken any action or voiced any concerns. The e-mails also suggest Rembrandt believes its technology may have been improperly used. But there is no pending motion or order defining or dealing with the use of Rembrandt's technology. See Exhibit "A", a true and correct copy of the email correspondence.

12. The position of Hawk's counsel is untenable because the *TRO* specifically references the Rembrandt technology and prohibits the Enjoined Parties from:

> Tak[ing] any action to sublicense, transfer, assign, or otherwise dispose of **or affect** any license or technology held or purported to be held by the Debtors' estates, including but not limited to the Ultra- D technology, and the Philips or **Rembrandt licenses**. (*TRO* ¶ 9(a), emphasis added)

Rembrandt does not need to file a separate motion in this court to protect its intellectual property, as it is clearly covered by the *TRO*. Unauthorized use and/or distribution of its technology does indeed **affect** the value of its license, perhaps irreparably.

13. If the Trustee is aware of violative actions (and should be so aware), he should take action to enforce the *TRO*. Due to a failure to monitor the actions of partis as to whether SCI

---

[2] In his *Opinion* of October 3, 2022, Vice Chancellor Laster of the Delaware Court of Chancery stated: "This decision holds that SeeCubic and Hawk engaged in contumacious conduct. Shad L. Stastney was the puppet master who pulled the strings." (C.A. No. 2020-0766-JTL p. 1)

and Hawk are violating the *TRO*, the Trustee is failing to secure the Debtor's assets, giving an unfair advantage to the Enjoined Parties, and negatively impacting all other parties in interest.

14. VSI believes that the TRO must be enforced after May 15, 2024 and there should be an immediate surrender of all Glasses-Free 3D demonstrators by the Enjoined Parties to the Trustee on behalf of the Debtor to ensure that violations of the *TRO* do not continue. This request merely underscores actions that should have occurred following the Delaware Supreme Court's 5-0 en banc decision of June 15, 2022, in which it found the Omnibus Agreement which purported to transfer the Debtor's assets SCI to be invalid and ordered the decision which granted SCI ownership and possession to be REVERSED and VACATED.

15. Certain Enjoined Parties argued in Chancery Court that they should not have to surrender assets to the Debtor because those assets had been improved during the time invalid possession. The Bankruptcy Court addressed this issue in the *TRO* with unequivocal language that prohibits the Enjoined Parties from using "the technology, **or any improvements thereon**" (*TRO* ¶ 9(b)(ii)). There is no reasonable justification for any of the Enjoined Parties to be making presentations of the Glasses-Free 3D technology.

16. The assets have never been returned to the Debtor or to the Trustee by SCI and those working in concert with it. As a result, they have continued to represent the Debtor's technology for their own benefit, to the detriment of the Debtor, its estate, and other parties in interest. Put another way, the allegations in the Debtor's Motion not only remain the same, but the circumstances have gotten worse and have increased to the detriment of the Debtor's Estate.

17. VSI respectfully requests that the Court issue a preliminary injunction or further extend the *TRO* until it has had discovery from the Enjoined Parties and an opportunity to be heard on violations of the *TRO*.

Dated:  May 13, 2024                                      Respectfully submitted,

By: /s/ Leslie Beth Baskin
Leslie Beth Baskin, Esquire
Spector Gadon Rosen Vinci P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
Direct Phone: 215-241-8926
Fax: 215-531-9145
*Attorneys for Visual Semiconductor, Inc.*

**CERTIFICATE OF SERVICE**

I, Leslie B. Baskin, hereby certify that on this 13th day of May, 2024, a true and correct copy of the foregoing Visual Semiconductor, Inc.'s Joinder to Debtor's Motion for Temporary Restraining Order and to Rembrandt 3D Holding Limited's Joinder Thereto has been served, via the Court's electronic filing system, upon all counsel of record.

*Leslie B. Baskin*
Leslie B. Baskin, Esquire